1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| NORTHWEST SCHOOL OF SAFETY, a Washington sole proprietorship, PUGET SOUND SECURITY, INC., a Washington corporation, PACIFIC NORTHWEST ASSOCIATION OF INVESTIGATORS, INC., a Washington corporation, FIREARMS ACADEMY OF SEATTLE, INC., a Washington corporation, DARRYL LEE, XEE DEL REAL, JOE WALDRON, GENE HOFFMAN, ANDREW GOTTLIEB, ALAN GOTTLIEB, GOTTLIEB FAMILY REVOCABLE LIVING TRUST, a Washington trust, and SECOND AMENDMENT FOUNDATION, a non-profit organization,<br><br>                    Plaintiffs,<br><br>          v.<br><br>BOB FERGUSON, Attorney General of Washington (in his official capacity), WASHINGTON ATTORNEY GENERAL'S OFFICE, and JOHN R. BATISTE, Chief of the Washington State Patrol (in his official capacity), and DOES I-V,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT** |

COMPLAINT - 1

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

### COMPLAINT

Plaintiffs NORTHWEST SCHOOL OF SAFETY, PUGET SOUND SECURITY, INC., PACIFIC NORTHWEST ASSOCIATION OF INVESTIGATORS, INC., FIREARMS ACADEMY OF SEATTLE, INC., DARRYL LEE, XEE DEL REAL, JOE WALDRON, GENE HOFFMAN, ANDREW GOTTLIEB, ALAN GOTTLIEB, GOTTLIEB FAMILY REVOCABLE LIVING TRUST, and SECOND AMENDMENT FOUNDATION allege as follows:

### INTRODUCTION

1.      Plaintiffs challenge the State of Washington's restriction on the non-commercial "transfer" of a firearm in Initiative to the Legislature Number 594 ("I-594") as being in violation of the Second and Fourteenth Amendments of the United States Constitution and Sections 3 and 24 of Article I of the Washington State Constitution.

2.      I-594's criminalization of the non-commercial "transfer" of firearms infringes on a host of Second Amendment rights, including the right to share a firearm for self-defense, the right to teach and learn hands-on firearm safety, the right to the return of a loaned firearm, and the right to take possession of a firearm when already licensed to do so by the State.  I-594's infringement is significantly more than an inconvenience, it presents a serious impediment to sharing firearms for self-defense and firearms safety, and imposes an overwhelming burden on individuals who are involved in repeated transfers of the same firearm (such as armed private security guards and private investigators who are required by state law to use firearms owned by their employer).

COMPLAINT - 2

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

3. I-594 is also so vague that a person of ordinary intelligence cannot understand its scope, which renders it subject to arbitrary enforcement. For example, it is unclear whether I-594 applies in situations involving the following types of activity: family members' common use of a firearm stored in the family's gun-safe, where no delivery takes place to another person; employees' common use of a firearm stored in a company's gun-safe, where no delivery takes place to another person; the intended delivery of a firearm to a common carrier, such as FedEx, for the purposes of shipping; the intended delivery of a firearm to a storage facility, such as a safety deposit box; the intended delivery of a firearm to airline personnel for the purpose of checking the firearm to the passenger's destination; exchanges of firearms at a firing range when those firearms are not permanently kept at the range; the return of a firearm from a law enforcement officer after an individual provides it for inspection during an investigative stop; and the intended delivery of a firearm that is property of a trust from one trustee of the trust to another. The agencies of the State of Washington have so far either disclaimed the responsibility to interpret I-594 or provided interpretations that are so far removed from the language as to be useless.

4. The broad and poorly constructed restrictions in I-594 render the enactment unconstitutional.

**THE PARTIES**

5. Plaintiff NORTHWEST SCHOOL OF SAFETY ("Northwest School of Safety") is a Washington sole proprietorship owned and operated by Monica Cowles, with its principal offices in Aberdeen, Washington. The Northwest School of Safety provides foundational

COMPLAINT - 3

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

firearm safety classes to women ranging in age from their teens to their 70s at Ms. Cowles'
residence to ensure a non-threatening environment for beginning students who may be nervous
about handling firearms.  The Northwest School of Safety encourages students to bring their
own firearms to class to provide its students the opportunity to learn the non-firing
fundamentals of grip, safe handling, loading, and addressing malfunctions on their own
firearms.  The Northwest School of Safety also owns two .22 caliber pistols for use by students
without their own firearms and intended to provide the additional opportunity to live-fire a
small caliber, low recoil, firearm while learning about stance, sight alignment, and smooth
trigger press.  In order to accomplish this training, the firearms are handed from instructor to
student, jointly held by instructor and student, and handed from student back to the instructor.
The Northwest School of Safety fears arrest, prosecution, fine, and imprisonment for its
instructors and its patrons as a result of the "transfer" in possession of firearms that it would
undertake at its classes but for their criminalization under I-594.

6.     Plaintiff PUGET SOUND SECURITY, INC. ("Puget Sound Security") is a
Washington corporation with its principal offices in Bellevue, Washington.  Puget Sound
Security is a licensed private security company.  By Washington State law, Puget Sound
Security is required to own or lease the firearms used by its employees and the employees who
carry firearms on duty are required to acquire an armed private security guard license.  Puget
Sound Security owns 12 firearms for 300 employees, which can require multiple changes in
possession of a given firearm throughout a day.  Puget Sound Security fears arrest, prosecution,
fine, and imprisonment for the "transfer" in possession of firearms that it would undertake

COMPLAINT - 4

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

within the company but for their criminalization under I-594.

7.     Plaintiff PACIFIC NORTHWEST ASSOCIATION OF INVESTIGATORS, INC. ("PNAI") is a Washington corporation with its principal offices in Seattle, Washington. PNAI is a professional organization of licensed investigators incorporated in the state of Washington, with 38 members.  The purposes of the PNAI include establishing goals for professional conduct and behavior, promoting the well-being of the profession, and developing laws that enhance the profession and protect the public.  By Washington State law, PNAI's members are required to own the firearms used by their employees and the employees who carry firearms on duty are required to acquire an armed private investigator license.  Eight members of the PNAI qualified as armed private investigators are also retired law enforcement officers, permitted to carry concealed firearms nationwide under federal law.  PNAI's members fear arrest, prosecution, fine, and imprisonment for the "transfer" in possession of firearms that it would undertake within the members' companies but for their criminalization under I-594.

8.     Plaintiff FIREARMS ACADEMY OF SEATTLE, INC. ("Firearms Academy of Seattle") is a Washington corporation with its principal offices in unincorporated Lewis County, Washington.  Firearms Academy of Seattle has operated a shooting instruction business with a live fire shooting range since 1995 in Lewis County.  Firearms Academy of Seattle cannot determine whether temporary transfers at the shooting range are exempted by I-594 because there is no indication of whether it is "authorized by the governing body of the jurisdiction in which such range is located."  Firearms Academy of Seattle has addressed this question to the Lewis County Prosecuting Attorney, who could not provide an answer because

COMPLAINT - 5

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Lewis County does not require or provide licenses or permits for shooting ranges.  Firearms Academy of Seattle fears arrest, prosecution, fine, and imprisonment for its instructors and its patrons as a result of the "transfer" in possession of firearms that would take place at the shooting range but for their criminalization under I-594.

9.     Plaintiffs DARRYL LEE ("Darryl Lee") and XEE DEL REAL ("Daisy Del Real") are a cohabitating couple residing in Lake Stevens, Washington.  Darryl Lee and Daisy Del Real both have valid concealed pistol licenses and share a firearm that they keep in their home.  Darryl Lee and Daisy Del Real cannot determine whether their joint use of their firearm is criminalized by I-594.  Darryl Lee and Daisy Del Real fear arrest, prosecution, fine, and imprisonment for the "transfer" in possession of firearms that they would undertake but for their criminalization under I-594.

10.    Plaintiff JOE WALDRON ("Waldron") is a resident of Florida.  Waldron is the legislative director for the Citizen's Committee for the Right to Keep and Bear Arms ("CCRKBA"), the Chairman/Treasurer of Gun Owner's Action League of Washington, and is a registered Washington state lobbyist; he travels to Washington frequently for business related to those positions.  When traveling in Washington, Waldron exercises his right to carry a firearm for self-defense pursuant to a valid Washington State concealed pistol license.  Waldron would check a firearm in his luggage but cannot determine whether the act of "transferring" the firearm to or from an airline employee is governed by I-594.  Waldron would also borrow a pistol from Plaintiff Alan Gottlieb, but federal law prohibits a licensed dealer in Washington from transferring a handgun to non-resident Waldron, making I-594's requirement

COMPLAINT - 6

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  of transfers through a licensed dealer impossible for Waldron.   Waldron fears arrest,

2  prosecution, fine, and imprisonment for the "transfer" in possession of firearms that he would

3  undertake but for their criminalization under I-594.

4          11.     Plaintiff GENE HOFFMAN ("Hoffman") is a resident of California.  Hoffman

5  is the Chairman of the CalGuns Foundation and a board member of Plaintiff Second

6  Amendment Foundation.  When traveling in Washington, Hoffman exercises his right to carry

7  a firearm for self-defense pursuant to license which allows him to carry a concealed firearm

8  under Washington law.  Hoffman would check a firearm in his luggage, but cannot determine

9  whether the act of "transferring" the firearm to or from an airline employee is governed by I-

10  594.   Hoffman would also borrow a pistol from Plaintiff Alan Gottlieb, but federal law

11  prohibits a licensed dealer in Washington from transferring a handgun to non-resident

12  Hoffman, making I-594's requirement of transfers through a licensed dealer impossible for

13  Hoffman.  In the past, Hoffman has kept his boat at various marinas in the Puget Sound for

14  vacation and business use. He intends to either purchase a larger boat in the Puget Sound or

15  bring his current boat back to the Puget Sound for cruising.  He would leave his firearms with

16  friends who are Washington residents before traveling into Canadian waters as bringing a

17  handgun into Canada is generally prohibited for U.S. Citizens, a practice in which Hoffman

18  cannot engage due to the restrictions imposed by the combination of I-594 and federal law.

19  Hoffman fears arrest, prosecution, fine, and imprisonment for the "transfer" in possession of

20  firearms that he would undertake but for their criminalization under I-594.

21          12.     Plaintiff ANDREW GOTTLIEB ("Andrew Gottlieb") is a resident of Arizona.

22

23

24

25

COMPLAINT - 7

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Andrew Gottlieb is a trustee of a trust which owns firearms and other tangible property, the trustees of which include Andrew Gottlieb and Plaintiff Alan Gottlieb.  The trustees would exchange the trust property between the trustees but cannot determine whether that act is governed by I-594.  If I-594 did govern the transfer of trust property between the trustees, federal law would prohibit a licensed dealer in Washington from transferring a handgun to non-resident Andrew Gottlieb, making I-594's requirement of transfers through a licensed dealer impossible for Andrew Gottlieb.  Andrew Gottlieb fears arrest, prosecution, fine, and imprisonment for the "transfer" in possession of firearms that he would undertake but for their criminalization under I-594.

13.    Plaintiff ALAN GOTTLIEB ("Alan Gottlieb") is a resident of Bellevue, Washington.  Alan Gottlieb is the founder and Executive Vice-President of Plaintiff Second Amendment Foundation and the Chairman of CCRKBA.  Alan Gottlieb is also a trustee of a trust which owns firearms and other tangible property, the trustees of which include Alan Gottlieb and Plaintiff Andrew Gottlieb.  Alan Gottlieb would lend firearms to Plaintiffs Waldron and Hoffman, store a firearm for Hoffman during Hoffman's trips to Canadian waters, and exchange trust property with fellow trustee Andrew Gottlieb, but federal law prohibits a licensed dealer in Washington from transferring firearms to non-residents Waldron, Hoffman and Andrew Gottlieb, making I-594's requirement of transfers through a licensed dealer impossible for Waldron, Hoffman and Andrew Gottlieb.  Alan Gottlieb fears arrest, prosecution, fine, and imprisonment for the "transfer" in possession of firearms that he would undertake but for their criminalization under I-594.

COMPLAINT - 8

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

14.     Plaintiff GOTTLIEB FAMILY REVOCABLE LIVING TRUST ("Gottlieb Trust") is a trust established under the laws of Washington, with its address in Bellevue, Washington.  Alan Gottlieb and Andrew Gottlieb are co-trustees of the Gottlieb Trust, which includes firearms and other tangible property.  The trustees would exchange the trust property between the trustees but cannot determine whether that act is governed by I-594.  If I-594 did govern the transfer of trust property between the trustees, federal law would prohibit a licensed dealer in Washington from transferring a handgun to non-resident Andrew Gottlieb, making I-594's requirement of transfers through a licensed dealer impossible for Andrew Gottlieb.  The trust and its trustees fear arrest, prosecution, fine, and imprisonment for the "transfer" in possession of firearms owned by the trust that the trustees would undertake but for their criminalization under I-594.

15.     Plaintiff SECOND AMENDMENT FOUNDATION, INC. ("SAF") is a non-profit member organization incorporated under the laws of the state of Washington with its principal place of business in Bellevue, Washington.  SAF has over 650,000 members and supporters nationwide.  The purposes of SAF include promoting the exercise of the right to keep and bear arms and education, publishing, and legal action focusing on the constitutional right to privately own and possess firearms.  SAF also promotes research and education on the consequences of abridging the right to keep and bear arms and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens.  Members of SAF would make non-commercial transfers of firearms, but refrain from doing so because they understand it may be unlawful to do so and fear arrest, prosecution, fine,

COMPLAINT - 9

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

and imprisonment. SAF brings this action on behalf of itself and its members. Plaintiffs Waldron, Hoffman, and Alan Gottlieb are members of SAF.

16.     Defendant BOB FERGUSON ("Ferguson") is the Attorney General of the State of Washington and is obligated to supervise his agency and comply with all statutory duties under Washington law. He is charged with enforcing, interpreting, and promulgating regulations regarding the transfer of firearms under Washington law, including I-594. Ferguson is responsible for executing and administering Washington's laws, customs, practices, and policies at issue in this lawsuit. Defendant Ferguson is sued in his official capacity.

17.     Defendant WASHINGTON ATTORNEY GENERAL'S OFFICE ("AGO") is an agency of the state of Washington, headed by the Attorney General, with a statutory duty to enforce, administer, and interpret the law and promulgate regulations regarding the transfer of firearms under Washington law, including I-594.

18.     Defendant JOHN R. BATISTE ("Batiste") is Chief of the Washington State Patrol and is obligated to supervise his agency and comply with all statutory duties under Washington law. Batiste is responsible for executing and administering Washington's laws, customs, practices, and policies at issue in this lawsuit. Defendant Batiste is sued in his official capacity.

19.     At this time, Plaintiffs are ignorant of the names of any additional individuals responsible for implementing or enforcing I-594. Plaintiffs therefore name these individuals as Doe Defendants and reserve the right to amend this Complaint when their true names are

COMPLAINT - 10

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

ascertained.  Furthermore, if and when additional persons and entities are discovered to have assisted and/or lent support to the enforcement alleged herein, Plaintiffs reserve the right to amend this Complaint to add persons and/or entities as Defendants.

20.     Collectively, Ferguson, AGO, Batiste, and Does are referred to hereinafter as "Defendants." [1]

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202 and 42 U.S.C. § 1983.

22.     This Court has personal jurisdiction over each of the Defendants because they are residents of the state of Washington, acted under the color of laws, policies, customs, and/or practices of the state of Washington, and acted within the state of Washington.

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

### I-594

*Enactment of I-594*

24.     I-594, an initiative to extend background checks for guns sales and transfers in the state of Washington, went into effect on December 4, 2014.

---

[1] The Defendants in this case were chosen purely because of their official duty to interpret and enforce I-594 in the areas in which the Plaintiffs are subject to I-594.  It should be noted that some of the Defendants may not personally agree with the enactment, but are bound to enforce the law as it stands.

COMPLAINT - 11

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

25. I-594 included, among other provisions, the following amendments to RCW 9.41:

a) Adding a definition to RCW 9.41.010 that "'Person' means any individual, corporation, company, association, firm, partnership, club, organization, society, joint stock company, or other legal entity."

b) Adding a definition to RCW 9.41.010 that "'Transfer' means the intended delivery of a firearm to another person without consideration of payment or promise of payment, including, but not limited to, gifts and loans."

c) Adding a section stating that all firearm transfers shall be subject to background checks, and where neither party is a licensed dealer, the transfer must be accomplished by completing the transfer through a licensed dealer. The dealer may charge a fee reflecting the market value of the costs incurred for facilitating the transfer.

d) Exempting the following transfers from being completed through a licensed dealer: bona fide gifts between immediate family members; temporary transfers to prevent imminent death or great bodily harm; temporary transfers to and from gunsmiths for the purpose of service or repair; temporary transfers between spouses or domestic partners; certain temporary transfers at shooting ranges, organized competitions, and hunting outings; certain temporary transfers to minors, and certain transfers by the operation of law.

e) Exempting law enforcement officers acting in the course of their official duties.

COMPLAINT - 12

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

f) Prohibiting a licensed dealer from delivering a firearm to a transferee until the earlier of the receipt of a cleared background check or ten business days elapsing.

g) Making the violation of the chapter a gross misdemeanor for a first offense and a class C felony for subsequent offenses.

*Interpretation and Enforcement of I-594*

26. Shortly after I-594 passed, the Washington State Patrol, through its spokesman Bob Calkins, announced that the agency was not planning any arrests or citations of individuals planning to protest the passage of I-594 by trading firearms amongst themselves without subjecting the changes in possession to background checks, noting that "We don't think that we could prove that that's a transfer."

27. On December 2, 2014, the Washington Department of Fish and Wildlife issued guidance on I-594 that it had formulated "in close consultation with our legal counsel in the Attorney General's Office." The guidance was focused on the Department's hunter education and stated, in part, that transfers between the Department's volunteer hunter education instructors and their students are exempt because the instructors are agents of the Department, which is in turn exempt as a law enforcement agency. The guidance goes on to note, however, that transfers between students would not be exempt, but that instructors could avoid liability under I-594 by engaging in a straw-man transfer by taking the firearm from one student and handing it to another.

28. On December 5, 2014, the Washington Department of Licensing issued a

COMPLAINT - 13

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

statement that the DOL's Firearms Program would not "provide legal advice or help the public or licensed firearm dealers interpret the firearms statutes found in RCW 9.41 or I-594."

29.     Plaintiffs are not aware of any arrests, citations, or prosecutions related to a violation of I-594 in the month it has been in effect.  But Plaintiffs and members of the SAF have refrained and continue to refrain from engaging in Constitutionally protected activities for fear of arrest and prosecution under I-594.

### Washington's Firearm Licenses

30.     In Washington State, a license is not required to openly carry a firearm.

31.     However, as relevant to Plaintiffs, Washington State has two licenses that may be obtained for the use of the specialized carrying of firearms: the concealed pistol license ("CPL") and the armed private security guard license.

### *CPL*

32.     RCW 9.41.070 authorizes local law enforcement officials to issue a license to a person to carry a pistol concealed on his or her person within the state for five years from the date of issue.  Pursuant to RCW 9.41.070, the "applicant's constitutional right to bear arms shall not be denied" unless the applicant is ineligible to possess a firearm (*i.e.* a felon, on bond pending a felony charge, subject of court order or warrant, or has been ordered to forfeit a firearm within one year of the application), their CPL has been revoked, or they are under 21.  A CPL may only be granted after the applicant has passed a background check through the national instant criminal background check system, the Washington State Patrol electronic database, the Department of Social and Health Services electronic database, and with other

COMPLAINT - 14

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

2

agencies or resources as appropriate.  Under 9.41.075, a CPL shall be immediately revoked upon discovery that the person is ineligible to possess a firearm.

3

*Washington Armed Private Security Guard and Private Investigator Licenses*

4

5

6

7

33.     RCW 18.165 and RCW 18.170 authorizes the Department of Licensing to issue licenses to allow private security guards and private investigators to carry a firearm on duty for a period of one year.

8

9

10

11

12

13

14

15

16

17

18

34.     Pursuant to RCW 18.165 and RCW 18.170, armed private security guard licenses and armed private investigator licenses require, among other things, that the applicant pass a background check and have been issued a current firearms certificate issued by the Criminal Justice Training Commission.  A year-long firearms certificate may only be obtained under RCW 43.101.250-260 and WAC 139-30 after receiving at least eight hours of firearm training that shall include classroom instruction on legal issues regarding the use of deadly force, decision making regarding the use of deadly force, safe firearms handling, and basic tactics in the use of deadly force; a written examination; a skills test requiring demonstration of satisfactory proficiency in safe firearms handling; and a range qualification demonstrating proficiency with the specific firearms that are to be used in the course of duty.

19

20

21

22

23

24

35.     Pursuant to RCW 18.165.060, a private investigator agency is required to own or lease all of the firearms carried by its armed private investigators in the performance of their duties.  Similarly, pursuant to RCW 18.170.050, a private security company is required to own or lease all of the firearms carried by its armed private security guards in the performance of their duties.

25

COMPLAINT - 15

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

*Federal Law Enforcement Officers' Safety Act*

36.     18 U.S.C. § 926C preempts state law to permit certain retired law enforcement officers to carry concealed firearms.  These retired officers must carry identification issued by the law enforcement agency with which the officer previously served and a certification issued by the State stating that the officer has met the active duty standards for qualification in firearms training to carry a firearm of the same type of the concealed firearm.  The state of Washington has provided the mechanism for such certification through RCW 36.28A.090.

### I-594's Infringement on Constitutional Rights

*Second Amendment*

37.     I-594 infringes on the shared use of firearms among individuals who live in the same home unless they are spouses or domestic partners.  I-594 requires long time cohabitating couples as well as parents and children to remove a jointly used firearm from their home and place it with a licensed dealer in order to effectuate a change of possession, no matter how temporary.  While I-594 allows for temporary transfers to prevent imminent death or great bodily harm, the length of the transfer must last no longer than necessary to prevent this danger, preventing one member of a cohabitating couple, such as Darryl Lee and Daisy Del Real, from transferring a firearm to the other for other uses, such as the regular lawful carrying of a firearm for self-defense, or in less-emergent self-defense situations where there is only a possibility of death or great bodily harm.

38.     I-594 infringes on an individual's ability to receive hands-on firearms safety training so that they may adequately practice self-defense.  Plaintiff Northwest School of Safety

COMPLAINT - 16

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

provides women of all ages with access to two pistols as part of a foundational firearms safety training which involves the students temporarily receiving a firearm from an instructor in order to learn the fundamentals of, among other things, safely holding and loading a firearm. Although I-594 may permit firearms safety courses taught at licensed firing ranges, any other courses would have to accomplish hands-on training by funneling each change of possession between the student and instructor through a licensed dealer and the resulting up-to two week waiting period for each transfer.

39.     I-594 infringes on a firearm owner's ability to retake possession of a firearm that has been previously loaned to another individual.  I-594 requires that the owner of a firearm who has loaned it to another may not retake possession of the firearm without doing so through a licensed dealer.  Plaintiff Alan Gottlieb, who is already licensed by the state of Washington to carry a concealed firearm, would loan his firearms to Plaintiffs Waldron, Hoffman and Andrew Gottlieb, but would not be able to retake possession of the firearms without incurring the expense and inconvenience of using a licensed dealer to conduct a subsequent "background check" each time a firearm changes hands.

40.     I-594 completely prohibits an out-of-state individual from borrowing a handgun to lawfully carry for self-defense while in the state of Washington.  Federal law prohibits a licensed dealer in Washington from transferring a handgun directly to a non-resident, 18 U.S.C. § 922(b)(3), which would make it impossible for a licensed dealer to effectuate that transfer, even if it is to be used or carried temporarily for self-defense.  I-594 prevents Plaintiffs Waldron and Hoffman, who are both licensed to carry firearms in the state of Washington,

COMPLAINT - 17

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

from temporarily obtaining a firearm for self-defense while they are traveling in Washington. I-594 prevents Plaintiff Hoffman from retrieving firearms he stored in Washington while he is sailing in Canadian waters.

41.    I-594 infringes on transfers between individuals who have already been licensed to carry firearms by the state of Washington.  An individual with a CPL, an armed private security guard license, an armed private investigator license, or retired law enforcement officer certification has previously been approved for possession and carrying of firearms in the state of Washington.  Requiring these individuals to undergo background checks to receive a firearm is futile, an unreasonable fit with the asserted objectives of I-594, and an infringement of their right to possess and carry a firearm.  Plaintiffs Puget Sound Security and PNAI members regularly give possession of company firearms to employees who are licensed by the state of Washington.  This process is required by state law for Puget Sound Security and PNAI members, who are required to own or lease the firearms used by their employees.

42.    I-594 presents an unreasonable fit for repetitive transfers as it imposes an undue burden in the form of additional expenses, travel, and time lost resulting from the continuous necessity to return to a licensed dealer.  I-594 requires that all transfers be accomplished through a licensed dealer, irrespective of whether a previous transfer between the parties had been approved a day earlier.  The licensed dealer may charge an administrative fee for every transfer, even if numerous transfers of the same firearm are required between the same parties. The licensed dealer is also required to take possession of the firearm for every transfer and may only deliver it to the transferee upon the return of a clear background check or the expiration of

COMPLAINT - 18

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

ten business days.  This process renders repetitive transfers, at best, prohibitively expensive and time-consuming and more likely functionally impossible.   Through this process I-594 effectively bans, among others, a family's sharing of a firearm for self-defense (*i.e.* Darryl Lee and Daisy Del Real), firearm safety courses (*i.e.* Northwest School of Safety), repeated lending of firearms (*i.e.* Alan Gottlieb), and businesses that are required by state law to own or lease the firearms used by their employees (*i.e.* Puget Sound Security and PNAI).

43.     The impacts of I-594 detailed above infringe upon or effectively ban the Plaintiffs' exercise of their Constitutionally protected rights.

*Vagueness*

44.     I-594's broad, but incomplete, definition of transfer combined with poorly defined exemptions make it impossible for a person of ordinary intelligence to ensure that their conduct is lawful.

45.     Plaintiffs cannot determine what actions are considered a "transfer" under I-594. I-594 states that a transfer is the non-commercial "intended delivery" of a firearm to another person.  Plaintiffs cannot determine whether the following acts satisfy this definition:

     a)    family members' common use of a firearm stored in the family's gun-safe, where no delivery takes place to another person;

     b)    employees' common use of a firearm stored in a company's gun-safe, where no delivery takes place to another person;

     c)    the intended delivery of a firearm to a common carrier, such as FedEx, for the purposes of shipping;

     d)    the intended delivery of a firearm to a storage facility, such as a safety deposit box;

COMPLAINT - 19

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

e) the intended delivery of a firearm to airline personnel for the purpose of checking the firearm to the passenger's destination;

f) exchanges of firearms at a firing range when those firearms are not permanently kept at the range;

g) exchanges of firearms at a firing range when the governing body of the jurisdiction in which such range is located does not require or grant authorization or licensing of a shooting range;

h) the return of a firearm from a law enforcement officer after an individual provides it for inspection during an investigative stop; and

i) the intended delivery of a firearm that is property of a trust from one trustee of the trust to another.

46. Further, Plaintiffs cannot determine who is a "person" under I-594 for the purposes of regulating transfers in the following circumstances:

a) whether corporations are separate persons from their employees/agents for transfers conducted for the purpose of employment, and, if so, which individual must represent the corporation at a licensed dealer for a background check; and

b) whether trustees are separate persons from each other and from the trust for the purposes of the handling of trust property, and, if so, which individual must represent the trust at a licensed dealer for a background check.

47. Plaintiffs are engaging in these acts, or would engage in these acts were it not for the threat of punishment under I-594.

48. Law enforcement officers, including the Defendants, have no means to determine the answer to these questions. As demonstrated by the Department of Fish and Wildlife's guidance to conduct straw-man transfers and the Washington State Patrol's statement that they did not believe they could prove that a change of possession not covered by an I-594 exemption was a "transfer", enforcement of I-594 would be difficult, if not

COMPLAINT - 20

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

impossible, and will result in differing interpretations of the meaning in different jurisdictions.

## CAUSES OF ACTION

### Count I – Right to Keep and Bear Arms – U.S. Constitution, Amendments II and XIV; WA Constitution, Art. I, Section 24, and 42 U.S.C. § 1943

49.     Paragraphs 1 through 48 above are incorporated as though fully stated herein.

50.     The Second Amendment to the United States Constitution states that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  The Supreme Court of the United States has held that the Second Amendment guarantees the right of individual citizens to keep and bear commonly-used firearms for all lawful purposes. *See District of Columbia v. Heller*, 554 U.S. 570 (2008). This right includes carrying firearms in the home as well as in public. *See Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014).  Corollary to the Second Amendment guarantee of an individual's fundamental right to possess commonly-used firearms is the ability to acquire said handguns for possession.

51.      The Second Amendment is fully applicable against the States and incorporated through the Fourteenth Amendment. *See McDonald v. Chicago*, 561 U.S. 742 (2010).

52.     Article I, Section 24 of the Washington State Constitution provides a similar, although broader right, stating that the "right of the individual to bear arms in defense of himself, or the state, shall not be impaired . . . ."

53.     I-594, with its amendments to RCW 9.41 relating to non-commercial transfers of firearms, as well as Defendants' enforcement of the same, prohibit, substantially interfere with, inhibit access to, and infringe upon the right to possess firearms and thus infringe

COMPLAINT - 21

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs' rights under the Second and Fourteenth Amendment of the U.S. Constitution as well as the rights in Article I, Section 24 of the Washington State Constitution.

54.     By maintaining and enforcing a set of laws infringing on the Plaintiffs' access to firearms, Defendants are creating and following customs, policies, and practices that violate the Second Amendment, both facially and as applied against the individual Plaintiffs in this action, thereby injuring Plaintiffs in violation of 42 U.S.C. § 1983.

55.     Because Plaintiffs are being deprived of their constitutional rights, Plaintiffs' injuries are irreparable and subject to declaratory, preliminary, and permanent injunctive relief against the Defendants' improper customs, policies, and practices.

### Count II – Void for Vagueness –
### U.S. Constitution, Amendment XIV and WA Constitution, Art. I, Section 3

56.     Paragraphs 1 through 55 above are incorporated as though fully stated herein.

57.     The Fourteenth Amendment to the United States Constitution guarantees due process by requiring adequate guidance to those who would be law-abiding that they may have a reasonable opportunity to know what is prohibited.  Vague statutes are thus prohibited because they impermissibly delegate basic policy matters to law enforcement, judges, and juries on an *ad hoc* and subjective basis.

58.     Article I, Section 3 of the Washington State Constitution provides a similar, although broader right, stating that "No person shall be deprived of life, liberty, or property without due process of law."

59.     The portions of I-594 that regulate non-commercial transfers are so vague that a person of ordinary intelligence cannot understand their scope, which renders it subject to

COMPLAINT - 22

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

arbitrary enforcement.  The potential for arbitrary and inconsistent application of I-594 chills the exercise of the right to bear arms and violates the guarantee of due process of law in the Fourteenth Amendment of the U.S. Constitution and Article I, Section 3 of the Washington State Constitution.  These portions of I-594 are accordingly void for vagueness, both facially and as applied against the individual Plaintiffs in this action.

60.      Because Plaintiffs are being deprived of their constitutional rights, Plaintiffs' injuries are irreparable and subject to declaratory, preliminary, and permanent injunctive relief.

### PRAYER FOR RELIEF

Plaintiffs request judgment entered in their favor against Defendants as follows:

1.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing I-594's amendments to RCW 9.41 relating to non-commercial transfers of firearms to private citizens who are otherwise qualified to possess firearms, or otherwise enforcing any policies, rules, or procedures prohibiting or otherwise restricting the non-commercial transfer of firearms to private citizens who are otherwise qualified to possess firearms;

2.      Declaratory relief consistent with the injunction;

3.      Attorney fees and costs pursuant to 42 U.S.C. § 1988; and

4.      Any other relief as the Court deems just and proper.

COMPLAINT - 23

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    DATED this 30th day of December, 2014.

2                                    CORR CRONIN MICHELSON
                                     BAUMGARDNER FOGG & MOORE LLP
3

4

5                                       */s/ Steven W. Fogg*
                                     Steven W. Fogg, WSBA No. 23528
6                                    David B. Edwards, WSBA No. 44680
                                     1001 Fourth Avenue, Suite 3900
7                                    Seattle, Washington 98154
                                     Tel: (206) 625-8600
8                                    Fax: (206) 625-0900
                                     Email:    sfogg@corrcronin.com
9                                              dedwards@corrcronin.com

10

11                                   Mikolaj T. Tempski, WSBA No. 42896
                                     Tempski Law Firm, PS
12                                   40 Lake Bellevue Dr., Suite 100
                                     Bellevue, WA 98005
13                                   Email:    miko@tempskilaw.com

14                                      Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT - 24

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900