The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| NORTHWEST SCHOOL OF SAFETY, a Washington sole proprietorship, PUGET SOUND SECURITY, INC., a Washington corporation, PACIFIC NORTHWEST ASSOCIATION OF INVESTIGATORS, INC., a Washington corporation, FIREARMS ACADEMY OF SEATTLE, INC., a Washington corporation, DARRYL LEE, XEE DEL REAL, JOE WALDRON, GENE HOFFMAN, ANDREW GOTTLIEB, ALAN GOTTLIEB, GOTTLIEB FAMILY REVOCABLE LIVING TRUST, A Washington trust, and SECOND AMENDMENT FOUNDATION, a non-profit organization,<br><br>Plaintiffs,<br><br>v.<br><br>BOB FERGUSON, Attorney General of Washington (in his official capacity), WASHINGTON ATTORNEY GENERAL'S OFFICE, and JOHN R. BATISTE, Chief of the Washington State Patrol (in his official capacity), and DOES I-V,<br><br>Defendants. | NO. 3:14-cv-6026 BHS<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>NOTE FOR MOTION CALENDAR MARCH 27, 2015 |

**I.   INTRODUCTION AND RELIEF REQUESTED**

In November 2014, Washington voters overwhelmingly passed Initiative 594 (I-594) to help prevent guns from falling into the hands of those prohibited from possessing them. I-594 applies Washington's background-check requirements to a wider range of gun sales and

DEFENDANTS' MOTION TO DISMISS        1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

transfers than were covered before. Just weeks after the law took effect, Plaintiffs filed suit, seeking to overturn the will of the voters. They claim that I-594 unconstitutionally burdens their right to bear arms and is impermissibly vague. But Plaintiffs ask this Court to resolve a hypothetical case. No one has been prosecuted for violating I-594 and no one has threatened any Plaintiff with prosecution. Under well-settled precedent, Plaintiffs thus lack standing to bring their claim and their claim is not ripe. Defendants therefore respectfully ask that this Court dismiss this case for lack of subject matter jurisdiction.

To establish standing and ripeness outside the First Amendment context, a plaintiff challenging a statute before it is enforced must show a "genuine threat of imminent prosecution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 1999) (en banc) (quoting *Stoinoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)). Plaintiffs have alleged no such threat. While Plaintiffs claim a generalized fear that some of their conduct may violate I-594, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Id.* Because Plaintiffs cannot satisfy the constitutional minimums of standing and ripeness, their claims must be dismissed.

Furthermore, because Plaintiffs seek adjudication as to hypothetical scenarios, the prudential elements of standing and ripeness also counsel against this Court exercising jurisdiction. Plaintiffs ask this Court to invalidate a voter-enacted initiative in a factual vacuum devoid of any evidence as to the law's application. The people of Washington deserve a chance to constitutionally apply the law they so overwhelmingly approved.

In the alternative, Defendants request that this Court dismiss (1) all claims against the Washington State Attorney General's Office and (2) all state law claims against Washington State officials Bob Ferguson and John R. Batiste. Under well-settled principles, these claims are barred by the Eleventh Amendment.

## II.   STATEMENT OF FACTS

The people of Washington adopted I-594 in the 2014 general election, with over 59 percent of voters supporting the measure.[1] I-594's purpose is to strengthen the gun background-check system by extending the background-check requirement to all gun sales and transfers in the state, with limited exceptions. I-594, § 1. The people found that expanding the application of criminal and public safety background checks for gun transfers was "an effective and easy mechanism to ensure that guns are not purchased by or transferred to those who are prohibited from possessing them." I-594, § 1. The initiative defined "transfer" as well as the "persons" to whom the law would apply. I-594 § 2 (17), (25). I-594 took effect on December 4, 2014.

On December 30, 2014, Plaintiffs filed this challenge to I-594. They allege that I-594's restrictions on the "non-commercial transfer" of firearms violate the right to possess firearms under the Second Amendment to the United States Constitution as well as article I, section 24 of the Washington Constitution. Compl. ¶ 53-54. Plaintiffs further allege that I-594's provisions related to non-commercial transfers of firearms are impermissibly vague, violating the Fourteenth Amendment to the United States Constitution, as well as the Washington Constitution. Compl. ¶ 59. Plaintiffs list nine hypothetical transactions as to which they are unclear if the facts would satisfy the definition of "transfer." Compl. ¶ 45. Also listed are two business entities, a corporation and a trust, as to which Plaintiffs are unclear who within the entity is a "person." Compl. ¶ 46.

To date, no one, and certainly none of the Plaintiffs, has been arrested, cited, or prosecuted in connection with any violation of I-594. Compl. ¶ 29. Nowhere in the Complaint do Plaintiffs cite any instance in which anyone, including any of the Plaintiffs, has been threatened with prosecution or enforcement. Plaintiffs concede that they have no intention of

---

[1] http://results.vote.wa.gov/results/20141104/State-Measures-Initiative-Measure-No-594-Concerns-background-checks-for-firearm-sales-and-transfers.html.

violating I-594's non-commercial transfer provisions. Compl. ¶¶ 5-15. Rather, Plaintiffs allege they would have engaged in certain types of transfers but now will not because of I-594. Compl. ¶¶ 5-15. Where the Complaint lists nine hypothetical transactions, Complaint ¶ 45, Plaintiffs generally allege they "are engaging in these acts, or would engage in these acts were it not for the threat of punishment under I-594," Compl. ¶ 47.

Plaintiffs named as Defendants the Washington State Attorney General's Office, Washington Attorney General Bob Ferguson, and John Batiste, Chief of the Washington State Patrol, each sued in their official capacities. Compl. ¶¶ 16-18. Plaintiffs allege jurisdiction over the state law claims is proper in this court under 28 U.S.C. § 1367 and 42 U.S.C. § 1983. Compl. ¶ 21. Defendants asserted lack of subject matter jurisdiction, ripeness, and standing, as well as sovereign immunity under the Eleventh Amendment as affirmative defenses in their Answer. Answer § VI, ¶ 5.

### III. ARGUMENT

Plaintiffs ask this Court to invalidate I-594's non-commercial transfer provisions, but they have not properly invoked the Court's jurisdiction because they lack standing and their claims are not ripe. Standing and ripeness each have both a constitutional component under article III of the United States Constitution and a prudential component. *Thomas*, 220 F.3d at 1138 (citing *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993)); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Plaintiffs bear the burden of proving both a case and controversy under the constitutional component and that the case is proper for review under prudential considerations. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). They have shown neither.

A. **Plaintiffs Have Failed to Establish Standing**

   1. **Plaintiffs Lack Article III Standing**

To establish standing under the Constitution, Plaintiffs must demonstrate that they have suffered "an 'injury-in-fact' to a legally protected interest that is both 'concrete and particularized' and 'actual or imminent,' as opposed to 'conjectural' or 'hypothetical.'" *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs have failed.

"The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983); *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002); *Thomas*, 220 F.3d at 1139; *San Diego Cnty.*, 98 F.3d at 1125. Instead, to establish standing based on an alleged fear of prosecution, as Plaintiffs attempt here, a plaintiff must show a "'genuine threat of imminent prosecution.'" *Thomas*, 220 F.3d at 1139 (quoting *Stoianoff*, 695 F.2d at 1126). In determining whether there is a "genuine threat of imminent prosecution," this court looks to "[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Id* at 1139. All of these factors counsel strongly against finding standing here.

As to the first factor, "[a] general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Id.* Rather, the Ninth Circuit has required specific allegations as to how and when the challenged law will be violated.

For example, in *Thomas*, the plaintiffs alleged that Alaska's housing laws violated their First Amendment rights by prohibiting discrimination based on marital status. *Id*. at 1139. The plaintiffs "pledge[d] their intent" to refuse to rent to unmarried couples in the future, but could not "specify when, to whom, where, or under what circumstances." *Id.* The Court found this

insufficient: "The landlords' expressed 'intent' to violate the law on some uncertain day in the future . . . can hardly qualify as a concrete plan." *Thomas*, 220 F.3d at 1140.

Similarly, in *San Diego County Gun Rights Committee*, the plaintiffs challenged the constitutionality of restrictions on gun ownership in the Crime Control Act of 1994. The plaintiffs alleged that they "intend[ed] to engage in activities prohibited by" the law. *San Diego Cnty.*, 98 F. 3d at 1127. The Ninth Circuit deemed this insufficient, saying "[t]he complaint does not specify any particular time or date on which plaintiffs intend to violate the Act." *Id.* "'[S]uch "some day" intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.'" *Id.* (quoting *Lujan*, 504 U.S. at 564).

Here, Plaintiffs each wish to engage in a "transfer" specific to their situation but state they have no intention of violating I-594's non-commercial transfer provisions. Compl. ¶¶ 5-15. Specifically, they allege that they would engage in various transfers "*but for* their criminalization under I-594." Compl. ¶¶ 5-15 (emphasis added). Unlike in *Thomas* and *San Diego County Gun Rights Committee*, where the plaintiffs vowed to violate the law in the future, the Plaintiffs here specifically state they will not violate the statute. Because Plaintiffs have no intent to violate I-594, much less to do so at a specific place and time, they cannot establish that they have a "concrete plan" as required by the first prong.

The Complaint also lists nine hypothetical situations that Plaintiffs allege may or may not constitute a "transfer" as well as two entities, a corporation and a trust, as to which Plaintiffs are unclear whether they constitute a "person" to whom a firearm could be transferred under I-594. Compl. ¶¶ 45-46. The Complaint then generally states "Plaintiffs are engaging in these acts, or would engage in these acts were it not for the threat of punishment under I-594." Compl. ¶ 47. This general statement also fails to establish an "articulate, concrete plan" to violate I-594's transfer provisions. Like the plaintiffs in *Thomas*, Plaintiffs here fail to allege "when, to whom, where, or under what circumstances" such a hypothetical event may

DEFENDANTS' MOTION TO DISMISS 6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

occur. *Thomas*, 220 F.3d at 1139. No particular Plaintiff specifically claims a plan to engage in any of the hypothetical "transfers" at a particular time or place. Plaintiffs also admit they are uncertain whether any of the hypotheticals would even violate the initiative. Where an unknown individual might engage in any of nine hypothetical actions, which may or may not violate a statute, at some unspecified time, such conduct barely amounts to even "[a] general intent to violate a statute at some unknown date in the future," let alone "an articulated, concrete plan." *Id.* This is insufficient, for "the Constitution requires something more than a hypothetical intent to violate the law." *Id.*

Turning to the second factor, "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," *id.*, Plaintiffs have not alleged any such warning or threat. Plaintiffs do not allege that anyone, much less any of the Plaintiffs themselves, has been threatened with prosecution under I-594. This is clearly insufficient under Ninth Circuit case law. As in *San Diego County Gun Rights Committee*, "[h]ere, plaintiffs do not identify even a general threat made against them." *San Diego Cnty.*, 98 F.3d at 1127. Rather, "Plaintiffs have established at most a possibility of their eventual prosecution . . . , which is clearly insufficient to establish a 'case or controversy.'" *Id.* at 1128 (quoting *Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1191 (9th Cir. 1975)). Indeed, Plaintiffs concede that the Washington State Patrol announced it would *not* arrest or issue citations to individuals protesting the passage of I-594 "by trading firearms amongst themselves without subjecting the changes in possession to background checks." Compl. ¶ 26. In short, Plaintiffs have failed to establish that any authority, let alone the named Defendants, has threatened to initiate any action against them.

The final factor, "the history of past prosecution or enforcement under the challenged statute," *Thomas*, 220 F.3d at 1139, also runs strongly against Plaintiffs. Plaintiffs concede that they are unaware of any "arrests, citations, or prosecutions related to a violation of I-594." Compl. ¶ 29. Simply put, Plaintiffs cannot show *any* "history of past prosecution or

enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139. "Plaintiffs' inability to point to any history of prosecutions undercuts their argument that they face a genuine threat of prosecution." *San Diego Cnty.*, 98 F.3d at 1128. Indeed, in *Thomas*, the Ninth Circuit found insufficient history of prosecution even where the anti-discrimination ordinance had been enforced, but the enforcement was rare and was civil rather than criminal. *Thomas*, 220 F.3d at 1140-41. Here, by contrast, there is no history of enforcement at all.

In short, every factor this court considers in deciding whether Plaintiffs have shown a "genuine threat of imminent prosecution," *Thomas*, 220 F.3d at 1139, demonstrates that they have not. Each factor counsels even more strongly against finding jurisdiction than in *Thomas* and *San Diego County Gun Rights Committee*. No one has been prosecuted under I-594, no one has threatened any Plaintiff with prosecution, and no Plaintiff has a concrete plan to violate the initiative. Plaintiffs have shown no injury, and therefore lack Article III standing.

### 2. Plaintiffs Have Not Shown Prudential Standing

Even where a plaintiff can show the constitutional minimum to establish standing, courts decline to find standing on prudential grounds in certain circumstances. *See, e.g.*, *Valley Forge Christian Coll.*, 454 U.S. at 474-75. Relevant here, prudential standing requirements prohibit adjudicating "abstract questions of wide public significance" that amount to "generalized grievances" shared by many members of the public. *Id.* Put another way, when plaintiffs make allegations that are "no more than a 'generalized grievance' shared in substantially equal measure by . . . a large class of citizens," the claims fail to merit the exercise of jurisdiction. *San Diego Cnty.*, 98 F.3d at 1131-32.

Here, Plaintiffs allege only a generalized grievance against an initiative enacted by Washington voters. Plaintiffs allege that they wish to engage in various non-commercial transfers of firearms but refrain from doing so due to I-594's background-check requirement. Compl. ¶¶ 5-15. Plaintiffs additionally allege that they are unable to determine whether certain hypothetical transactions count as "transfers." Compl. ¶¶ 44-47. These allegations are nothing

more than abstract questions potentially relevant "not only [to] the named plaintiffs, but also anyone desiring to" engage in non-commercial firearm transfers in Washington. *San Diego Cnty.*, 98 F.3d at 1132. As such, these grievances are far too general to merit review.

**B.    Plaintiffs' Claims Are Not Ripe**

   **1.    Plaintiffs Have Not Established Constitutional Ripeness**

The ripeness doctrine is "designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Thomas*, 220 F.3d at 1138 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Ripeness has been characterized as "standing on a timeline," and to establish that a pre-enforcement challenge to a statute is ripe, a plaintiff must satisfy the same test required to show injury in fact for standing purposes in such a challenge. *Thomas*, 220 F.3d at 1138. That is, to establish Article III ripeness, Plaintiffs must show that they face a "genuine threat of imminent prosecution." *Id.* As noted above, the Ninth Circuit considers "[1] whether plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Id.* For the reasons articulated above, each of these factors supports finding that Plaintiffs' claim is not ripe. No one has been prosecuted under I-594, no one has threatened any Plaintiff with prosecution, and no Plaintiff has a concrete plan to violate the initiative. Plaintiffs offer this court a purely hypothetical case, and their claim is not ripe under Article III.

It is particularly clear that Plaintiffs' claim is not constitutionally ripe because one of their two contentions is that I-594 is impermissibly vague. Where a statute "does not implicate First Amendment rights, it may be challenged for vagueness only as applied." *San Diego Cnty.*, 98 F.3d at 1132 (citing *United States v. Martinez*, 49 F.3d 1398, 1403 (9th Cir.1995); *United States v. Mazurie*, 419 U.S. 544, 550 (1975)). But an as-applied vagueness challenge is particularly dependent on facts about how a statute has actually been applied, facts that are

absent here. *See, e.g.*, *San Diego Cnty.*, 98 F.3d at 1132. ("[T]he problem presented by the lack of a factual context is particularly acute in light of plaintiffs' vagueness, overbreadth, and ambiguity claims."); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996) ("Where there are insufficient facts to determine the vagueness of a law as applied, the issue is not ripe for adjudication."). The absence of such facts highlights that Plaintiffs' complaint concerns only "'abstract disagreements'" and is not ripe. *Thomas*, 220 F.3d at 1138 (quoting *Abbott Labs.*, 387 U.S. at 148).

### 2. Plaintiffs Have Not Established Ripeness As a Prudential Matter

In deciding whether a case meets the prudential aspects of the ripeness doctrine, this court looks to "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. Both factors here counsel against attempting to resolve this hypothetical case.

The issues in this case are not fit for judicial decision because Plaintiffs challenge a criminal statute on constitutional grounds before it has ever been enforced. "[P]rudential considerations of ripeness are amplified where constitutional issues are concerned," *Scott*, 306 F.3d at 662, and courts routinely decline to decide constitutional challenges where there are no facts or applications of the law upon which the court can base its decision, s*ee Oklevueha Native American Church of Haw., Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012) ("Courts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule."). Courts are particularly reluctant to consider as-applied vagueness challenges absent any evidence as to how a law has actually been applied. *See, e.g.*, *San Diego Cnty.*, 98 F.3d at 1132; *Easyriders*, 92 F.3d at 1495.

For example, in *San Diego County Gun Rights Committee*, the plaintiffs sought pre-enforcement review of the Crime Control Act's prohibition of the manufacture, transfer, or possession of semiautomatic assault weapons. Because the Act had not been enforced against

anyone at the time of the challenge, the court found the case did not meet the prudential requirements for ripeness. *San Diego Cnty.*, 98 F.3d at 1132-33. "[T]he District Court should not be forced to decide . . . constitutional claims in a vacuum. At this point, a decision on the merits of plaintiffs' constitutional claims would be devoid of any factual context whatsoever." *Id*. at 1132 (internal citations omitted). The Court went on to note that "the problem presented by the lack of a factual context is particularly acute in light of plaintiffs' vagueness, overbreadth, and ambiguity claims." *Id.*

Similarly here, this Court should not be required to decide the constitutional claims against I-594, including the vagueness claim, in a vacuum devoid of any factual context or prior application of the statute. Plaintiffs set forth no actual controversy as to application of I-594. Rather, they list a variety of hypothetical transactions they would like to engage in but for the initiative's background-check requirements, while also alleging they are subjectively uncertain whether these hypothetical transactions fall under the definition of a "transfer." Compl. ¶¶ 5-15, 45. Because Plaintiffs ask this Court to decide constitutional issues based solely on hypothetical situations, the issues presented are not fit for judicial review.

There is also no hardship to Plaintiffs in delaying judicial review. Just as in *San Diego County Gun Rights Committee*, none of the plaintiffs has been charged with violating I-594. *San Diego Cnty.*, 98 F.3d at 1132. Additionally, given that no one has been prosecuted under I-594, no one has threatened Plaintiffs with prosecution, and Plaintiffs have stated they do not intend to violate I-594, Plaintiffs do not "face a credible threat of prosecution." *Id.* at 1132-33. Therefore, as in *San Diego County Gun Right Committee*, "any hardship caused by [a] decision to delay resolution of plaintiffs' claims does not justify the exercise of jurisdiction." *Id.* at 1132.

In sum, Plaintiffs have not shown prudential ripeness because this matter is not fit for review and no hardship will result from delaying resolution of these constitutional claims.

**C.    The Eleventh Amendment Bars Many of Plaintiffs' Claims**

If this Court determines that Plaintiffs have met their burden of establishing standing and ripeness and declines to dismiss this case in its entirety, Defendants alternatively ask this Court to dismiss (1) all claims against the Washington Attorney General's Office and (2) all state law claims against state officials Bob Ferguson and John Batiste as barred by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI. Two aspects of the Eleventh Amendment are relevant here. First, it bars actions in federal court against state agencies, such as the Attorney General's Office, absent that state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Second, absent consent, it bars suits in federal court against state officers based on alleged violations of state law. *Id*. at 106.

Here, Defendants have not consented to a waiver of their sovereign immunity. *Yakama Indian Nation v. Washington*, 176 F.3d 1241, 1245 (9th Cir. 1999); *see also* Answer at §. VI., ¶ 5. Because Plaintiffs seek relief in federal court against a state agency, all of their claims against the Attorney General's Office must be dismissed. *See Pennhurst*, 465 U.S. at 106. Moreover, because they are bringing state law claims against state officials, those claims must also be dismissed for lack of subject matter jurisdiction. *Id.*

Neither Plaintiffs' invocation of 42 U.S.C. § 1983 nor this court's supplemental jurisdiction under 28 U.S.C. § 1367 alters this result. *See Pennhurst*, 465 U.S. at 152 (addressing 42 U.S.C. § 1983); *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541-42 (2002) (addressing supplemental jurisdiction). Therefore, even if this court declines to dismiss Plaintiffs' claims based on standing and ripeness, their claims against the Washington Attorney

General's Office and their state law claims against Washington State officials are still barred under the Eleventh Amendment and must be dismissed.

### IV. CONCLUSION

Because Plaintiffs can show no constitutional injury resulting from I-594's enactment and thus can show neither standing nor ripeness, Defendants ask this Court to dismiss this case with prejudice for lack of subject matter jurisdiction. In the alternative, Defendants ask this Court to dismiss all claims against the Washington Attorney General's Office and all state law claims against Bob Ferguson and John R. Batiste as barred by the Eleventh Amendment.

DATED this 5th day of March, 2015.

ROBERT W. FERGUSON
  *Attorney General*

NOAH G. PURCELL, WSBA # 43492
  *Solicitor General*

s/ *R. July Simpson*
R. JULY SIMPSON, WSBA #45869
  *Assistant Attorney General*

JEFFREY T. EVEN, WSBA #20367
  *Deputy Solicitor General*

REBECCA R. GLASGOW, WSBA #32886
  *Deputy Solicitor General*

PO Box 40100
Olympia, WA  98504-0100
360-753-6200
Counsel for Bob Ferguson, Washington Attorney General's Office and John R. Batiste

## CERTIFICATE OF SERVICE

I certify, under penalty of perjury under the laws of the state of Washington, that I electronically filed a true and correct copy of the foregoing document with the United States District Court ECF system, which will send notification of the filing to the following:

| | |
|---|---|
| David B. Edwards<br>Steven W. Fogg<br>Corr Cronin Michelson Baumgardner & Preece<br>1001 4th Avenue, Suite 3900<br>Seattle, WA 98154-1051<br>Phone: 206.625.8600<br>dedwards@corrcronin.com<br>sfogg@corrcronin.com | Mikolaj T. Tempski<br>Tempski Law Firm PS<br>40 Lake Bellevue, Suite 100<br>Bellevue, WA 98005<br>Phone: 425.998.6203<br>Email: Miko@TempskiLaw.com |
| Gregory J. Wong<br>Paul J. Lawrence<br>Sarah S. Washburn<br>Pacifica Law Group, LLP<br>1191 Second Avenue, Suite 2000<br>Seattle Washington 98101-3404<br>paul.lawrence@pacificalawgroup.com<br>greg.wong@pacificalawgroup.com<br>sarah.washburn@pacificalawgroup.com | |

DATED this 5th day of March 2015, at Olympia, Washington.

    s/ Stephanie N. Lindey
    STEPHANIE N. LINDEY
    Legal Secretary