THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NORTHWEST SCHOOL OF SAFETY, a Washington sole proprietorship, PUGET SOUND SECURITY, INC., a Washington corporation, PACIFIC NORTHWEST ASSOCIATION OF INVESTIGATORS, INC., a Washington corporation, FIREARMS ACADEMY OF SEATTLE, INC., a Washington corporation, DARRYL LEE, XEE DEL REAL, JOE WALDRON, GENE HOFFMAN, ANDREW GOTTLIEB, ALAN GOTTLIEB, GOTTLIEB FAMILY REVOCABLE LIVING TRUST, a Washington trust, and SECOND AMENDMENT FOUNDATION, a non-profit organization,<br><br>Plaintiffs,<br><br>v.<br><br>BOB FERGUSON, Attorney General of Washington (in his official capacity), WASHINGTON ATTORNEY GENERAL'S OFFICE, and JOHN R. BATISTE, Chief of the Washington State Patrol (in his official capacity), and DOES I-V,<br><br>Defendants. | Case No. 3:14-cv-06026 BHS<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>**NOTED ON CALENDAR: FRIDAY, MARCH 27, 2015** |

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 1
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs currently seek to engage in constitutionally protected activity, and would do so if not for criminal prohibitions enforced by the Defendants that Plaintiffs would face. These circumstances easily satisfy both Article III and prudential standing by establishing the concreteness and immediacy of Plaintiffs' injuries. Thus, this Court has subject-matter jurisdiction, notwithstanding Defendants' reliance on an outdated analysis of standing and the Second Amendment. However, as detailed below, given the State's choice to not consent to this Court's jurisdiction, those claims subject to the Eleventh Amendment should be dismissed without prejudice so that they may be refiled in state court.

## STATEMENT OF FACTS

As detailed in the Complaint, Plaintiffs currently and reasonably fear arrest, prosecution, fines, and imprisonment for the constitutionally protected "transfers" in possession of their firearms that they would be currently undertaking but for their criminalization under I-594. *See* Compl. at ¶¶ 5-15, 29 & 37-47. The "transfers" in possession that the Plaintiffs would undertake include an instructor's hands-on teaching of women's gun safety classes, a security company's issuance of company-owned firearms to its employees, and a cohabitating couple's use of a shared firearm. *Id.* Even if Plaintiffs were to attempt to comply with I-594, many of Plaintiffs' desired "transfers" would be rendered functionally impossible by a prohibitively expensive and time-consuming process that requires every transfer to be made at a licensed dealer and subject to resulting waiting periods. *Id.* at ¶ 42. For example, supposing that Northwest School of Safety were to go to the extreme and hold its classes at a licensed dealer, the process of having to pay for the dealer to hold the firearm for up to ten business days pending a background check whenever a firearm changes hands between an instructor and a student would effectively ban the entire endeavor. *Id.* The same is true for a family's sharing of a firearm for self-defense, repeated lending of firearms, and businesses that are required by state law to own or lease the firearms

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 2
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

used by their employees. *Id.* In addition, some of Plaintiffs' desired transfers are completely barred by I-594's requirements, including an out-of-state individual's borrowing of a handgun for self-defense while in Washington. *Id.* at 40. Moreover, Plaintiffs are currently refraining from "transferring" possession of their firearms for fear that certain specific acts in which they would be engaging are encompassed by I-594's broad, but utterly vague, definition of "transfer." *See id.* at ¶¶ 44-48.

At the same time Plaintiffs are refraining from engaging in constitutionally protected activity because of criminalization under I-594, the Defendants are either intentionally refraining from enforcing what appear to be clear violations of I-594 or providing interpretations of the law that allow state employees to circumvent the law through straw-man transfers. *See id.* at ¶¶ 26-29. Although to date there do not appear to have been any arrests or prosecutions related to a violation of I-594, Plaintiffs continue to refrain from engaging in constitutionally protected activities for fear of arrest and prosecution under I-594. *Id.* at ¶¶ 29 & 47.

## ARGUMENT

### I. PLAINTIFFS HAVE ESTABLISHED ARTICLE III AND PRUDENTIAL STANDING

The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, among other things, that plaintiffs have standing and that claims be ripe for adjudication. *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication, and requires, in part, a showing of an injury-in-fact, which is an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Ripeness allows federal courts to decline matters that are premature for review because the purported injuries are too

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 3
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

speculative, a question that "turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983); *see also Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (noting that the central concern of the ripeness inquiry is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all").

Defendants' Motion to Dismiss argues that the Complaint fails to establish an injury-in-fact or ripeness.[1] Defendants' arguments are without basis, because they: 1) ignore the current and ongoing injury that has been inflicted on Plaintiffs by the restriction, if not the effective prohibition, of the ability to "transfer" possession of their firearms and the resulting inability to undertake certain actions, such as carrying the firearm for self-defense, that result from the deprivation; and 2) are based entirely on outdated case law that has been rejected by the Supreme Court.

### A. Plaintiffs are currently being injured by I-594's infringement on non-commercial "transfers" of firearms.

An actual case or controversy is created whenever a law causes a reasonable person to forego behavior in which they would otherwise engage:

> [W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The

---

[1] Defendants do not question the satisfaction of the other two prongs of the standing analysis: traceability and redressability. *See Lujan*, 504 U.S. at 560-61. This is undoubtedly because there is "ordinarily little question" about the satisfaction of these prongs in cases involving government action. *Id.* Here, the Plaintiffs' injuries of having to forgo the act of "transferring" possession of their firearms are directly traceable to the coercive effect of I-594 and a finding of unconstitutionality would redress the injury. *See, e.g., Lujan*, 504 U.S. at 560-61 (holding that if "the plaintiff is himself an object of action (or forgone action) . . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it"); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 192 & n.5 (5th Cir. 2012) (holding that "the injury of not being able to purchase handguns . . . . is fairly traceable to the challenged federal laws, and holding the laws unconstitutional would redress the injury").

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS - 4
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

> plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction. . . . That did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced. The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (citations omitted). Thus, while a prosecutorial threat must be credible, in that it must be presently altering a plaintiff's behavior, a prosecution need not be imminent. *Id.* To hold otherwise would provide the Government with a pocket veto over any pre-enforcement litigation. *See id* (reviewing the Court's pre-enforcement jurisprudence). That Defendants have chosen not to enforce I-594, even in the face of intentional violations, does not render Plaintiffs' injury any less concrete, particularized, or actual. *See Compl.* at ¶¶ 26-29. It certainly does not allow Defendants to prevent review of I-594 by disavowing enforcement or pointing to a lack of enforcement to date. *See, e.g., Valley View Health Care, Inc. v. Chapman*, 992 F. Supp. 1016, 1033-35 (E.D. Cal. 2014) (applying *MedImmune* and collecting cases where standing was found despite a government's reliance on a history of non-enforcement and an "absence of imminent prosecution", so long as the law remained effective and subject to enforcement).

The *MedImmune* principles of coercion from action apply in this case. The Complaint details how the Plaintiffs would immediately and repeatedly transfer the possession of firearms that are currently in their possession but for the criminal liability that they would face from I-594. Further, even if Plaintiffs were to attempt to comply with the requirements of I-594, the Complaint details how many of Plaintiffs' transfers could not be accomplished through I-594's framework. Thus, although the Plaintiffs have an immediate and specific intent to engage in an activity, they have been coerced into non-action by the challenged statute. Far from a situation involving the mere existence of a statute which may or may not be applied to Plaintiffs, I-594

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS - 5
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

presents a significant impediment to Plaintiffs' present intentions to "transfer" possession of their firearms, which has disrupted the Plaintiffs' lives, businesses, and travel by forcing them to forgo those transfers. Thus, Plaintiffs have sustained the kind of concrete, particularized, and actual injuries that arise from pre-enforcement litigation, as illustrated by *MedImmune.*

Analogous case law bears out that Plaintiffs have suffered an Article III injury from the restriction or prohibition of their ability to "transfer" possession of their firearms. In *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, the 5th Circuit found that several 18 to 20 year olds were injured by a law that banned certain firearms dealers from selling to 18 to 20 year olds, even if those individuals could still purchase firearms elsewhere:

> The government is correct that the challenged federal laws do not bar 18-to-20-year-olds from possessing or using handguns. The laws also do not bar 18-to-20-year-olds from receiving handguns from parents or guardians. Yet, by prohibiting FFLs from selling handguns to 18-to-20-year-olds, the laws cause those persons a concrete, particularized injury — i.e., the injury of not being able to purchase handguns from FFLs.

700 F.3d at 191-92. In *Jackson v. City & County of San Francisco*, the court found that an ordinance requiring trigger locks injured plaintiffs because they were refraining from following through on their current intention to keep their guns unlocked to enhance their personal safety for potential self-defense:

> Plaintiffs have not merely alleged that they "wish and intend" to violate the ordinances in some vague and unspecified way, at some unknown point in the future. Plaintiffs allege they own guns now, and that based on their personal views of how it would enhance their personal safety, they want to keep their guns unlocked now for potential use in self-defense, and that they wish to acquire prohibited ammunition now for the same purpose. While the time that they will actually use the guns in self-defense is unknown and may never come, that does not undermine the immediacy and concreteness of the injury they have alleged.

829 F. Supp. 2d 867, 872 (N.D. Cal 2011). Thus, the *Jackson* court denied the motion to dismiss "[b]ecause plaintiffs have adequately alleged an intent and desire to engage in conduct that is

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 6
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

prohibited by the ordinances but which they contend is constitutionally protected." Finally, it should be noted that I-594's imposition of excessive costs, in terms of both time and money, for Plaintiffs to actually comply with the regulatory scheme to complete their intended "transfers" of possession is itself an Article III injury. *Compare Compl.* at ¶ 42 (detailing the prohibitively expensive and time-consuming process that would be required for every transfer to be made at a licensed dealer that would require a fee and be subject to a waiting period of up to ten days), *with Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) ("Allegedly, plaintiffs spent money that, absent defendants' actions, they would not have spent. This is quintessential injury in fact.").

Notably, Plaintiffs' claims satisfy ripeness and prudential concerns for all the same reasons that Plaintiffs have sustained Article III injuries:

> Defendants' contention that the plaintiffs' claims are not ripe are based on the same basic arguments as their position on standing, and do not provide a separate basis for dismissal. *See MedImmune*, 549 U.S. at 128 n. 8 ("standing and ripeness boil down to the same question in this case.") Similarly, their arguments that the case should be dismissed on prudential standing grounds rest on the same assumptions as to the concreteness and immediacy of plaintiffs' alleged injury. Accordingly, the motion to dismiss must be denied.

*Jackson*, 829 F. Supp. 2d at 872. Defendants reiterate their argument that the lack of enforcement of I-594 prevents ripeness and prudential standing because Plaintiffs' "hypothetical" claims amount to a generalized grievance with the statute that is causing no harm. However, Defendants either mischaracterize or ignore the specific allegations in the Complaint which demonstrate that the Plaintiffs are currently being injured by their inability to undertake specific "transfers" of possession of their currently owned firearms, which is impacting Plaintiffs' lives, businesses, travel, and personal safety. *See Compl.* at ¶¶ 5-15 & 37-47. Defendants' argument that potential future enforcement of I-594 may better develop the understanding of I-594, does nothing to transform Plaintiffs' current ongoing injuries into uncertain or contingent events that may never

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 7
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

occur. This is true even for the claims of constitutional vagueness, because while the Plaintiffs cannot determine whether the specific "transfers" of possession they are engaging in are actually violations of I-594, they appear to be violations on their face and the State has either disavowed the responsibility to provide guidance or has evidenced an intent to not enforce the statute as written. *Id.* at ¶¶ 26-29 & 44-47. Given this total lack of enforcement of I-594, it is unclear how Defendants can claim that these legal issues may one day be more suitable for review. *See, e.g., Valley View*, 992 F. Supp. at 1033-35 & 1049-50 (noting that the government's failure to enforce and their "ambivalent position . . . creates no less confusion and uncertainty as to how" the plaintiffs should proceed and, thus, holding that plaintiffs had standing and their claims were ripe). Nor is it clear how the Defendants can claim a lack of hardship when withholding review will require that Plaintiffs choose between violating I-594 and facing criminal prosecution or continuing to refrain from "transferring" possession of their firearms, further endangering their lives, damaging their businesses, and limiting their travel. *See, e.g., MedImmune*, 549 U.S. at 128-29 ("The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.") Accordingly, this case involves present and concrete issues fit for judicial review that would present a significant ongoing hardship to Plaintiffs if they were not addressed by the Court.

### B. Defendants' standing argument is outdated and has been rejected by the Supreme Court.

In comparison to the discussion of applicable precedent above, Defendants' standing argument relies entirely on *San Diego County Gun Rights Comm. v. Reno*, and its progeny. 98 F.3d 1121 (9th Cir. 1996). However, the Ninth Circuit's standing analysis in *Gun Rights Committee* has been undermined, if not entirely overruled, by the Supreme Court's rejection of

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 8
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

both the case's collectivist view of the Second Amendment and its requirement for an "imminent" prosecution. *See, e.g., Jackson*, 829 F. Supp. 2d at 868 (denying motion to dismiss in a similar Second Amendment case because the "continuing vitality of *Gun Rights Committee*" is "questionable"). Because the Defendants' entire standing argument is based on outdated law, the Motion to Dismiss should be denied.

### 1. The Supreme Court rejected the Ninth Circuit's interpretation of the Second Amendment in *District of Columbia v. Heller*.

As an initial matter, Second Amendment jurisprudence is not as restrictive as Defendants' brief makes it out to be. Prior to 2008, *Gun Rights Committee*, and other Ninth Circuit precedent on Second Amendment cases, espoused a collectivist view of the Second Amendment. Essentially, the view was that the Second Amendment protects a collective right rather than an individual right, and therefore an individual's standing could not be established by challenging the constitutionality of a firearm statute under the Second Amendment. *Gun Rights Committee*, 98 F.3d at 1124-25. Indeed, the Ninth Circuit was so confident in this collectivist view in *Gun Rights Committee* that it denied standing under the Second Amendment in only three sentences of discussion. *Id.*

The Supreme Court rejected this interpretation in 2008, when it decided in *District of Columbia v. Heller* that the Second Amendment conveyed an individual right, not a collective one. 554 U.S. 570, 595 (2008). Notably, the availability of the Second Amendment as a basis for a plaintiffs' individual standing was echoed by the dissent, which noted that while they disagreed over the scope of the Second Amendment, "[s]urely it protects a right that can be enforced by individuals." 554 U.S. at 636 (Stevens, J., dissenting)." *Heller* thus renders invalid the Ninth Circuit's pre-*Heller* standing doctrine for the Second Amendment. As a result of that invalidity, the reasoning that underlay the *Gun Rights Committee* has been substantially eroded,

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 9
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

both the case's collectivist view of the Second Amendment and its requirement for an "imminent" prosecution. *See, e.g., Jackson*, 829 F. Supp. 2d at 868 (denying motion to dismiss in a similar Second Amendment case because the "continuing vitality of *Gun Rights Committee*" is "questionable"). Because the Defendants' entire standing argument is based on outdated law, the Motion to Dismiss should be denied.

### 1. The Supreme Court rejected the Ninth Circuit's interpretation of the Second Amendment in *District of Columbia v. Heller*.

As an initial matter, Second Amendment jurisprudence is not as restrictive as Defendants' brief makes it out to be. Prior to 2008, *Gun Rights Committee*, and other Ninth Circuit precedent on Second Amendment cases, espoused a collectivist view of the Second Amendment. Essentially, the view was that the Second Amendment protects a collective right rather than an individual right, and therefore an individual's standing could not be established by challenging the constitutionality of a firearm statute under the Second Amendment. *Gun Rights Committee*, 98 F.3d at 1124-25. Indeed, the Ninth Circuit was so confident in this collectivist view in *Gun Rights Committee* that it denied standing under the Second Amendment in only three sentences of discussion. *Id.*

The Supreme Court rejected this interpretation in 2008, when it decided in *District of Columbia v. Heller* that the Second Amendment conveyed an individual right, not a collective one. 554 U.S. 570, 595 (2008). Notably, the availability of the Second Amendment as a basis for a plaintiffs' individual standing was echoed by the dissent, which noted that while they disagreed over the scope of the Second Amendment, "[s]urely it protects a right that can be enforced by individuals." 554 U.S. at 636 (Stevens, J., dissenting)." *Heller* thus renders invalid the Ninth Circuit's pre-*Heller* standing doctrine for the Second Amendment. As a result of that invalidity, the reasoning that underlay the *Gun Rights Committee* has been substantially eroded,

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 9
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

if not entirely erased, and makes its application questionable at best. *See Jackson*, 829 F. Supp. 2d at 871. Most notably, it greatly undermines the Defendants' argument that Plaintiffs' claims have not satisfied prudential standing because they amount only to generalized grievances shared by the public at large.

### 2. The Supreme Court rejected the Ninth Circuit's requirement of an imminent prosecution to prove standing in *MedImmune, Inc. v. Genentech, Inc.*

Even putting aside *Heller*'s erosion of Ninth Circuit precedent on Second Amendment standing, the Defendants' motion advocates a significantly more restrictive view of standing than is currently applicable under Supreme Court precedent. In short, the Defendants' central argument against standing in this case is that it cannot exist because there have been no prosecutions under I-594 and none of the Plaintiffs have established that they have been specifically threatened with prosecution. In support of that argument, Defendants rely exclusively on Ninth Circuit precedent which had previously held that a plaintiff must establish standing through a "genuine threat of imminent prosecution." *See Gun Rights Committee*, 98 F.3d at 1126. However, as discussed above, the Supreme Court has recently rejected this view by recognizing that "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *MedImmune*, 549 U.S. at 128-29; *see also* Jackson, 829 F. Supp. 2d at 871 ("The continued vitality of *Gun Rights Committee* is also questionable in light of *Medimmune* . . . ."). In light of the Defendants' almost exclusive reliance on now outdated law and the irrelevant factor of an imminent prosecution, the Motion to Dismiss should be denied.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 10
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## II. PLAINTIFFS' CLAIMS SUBJECT TO THE ELEVENTH AMENDMENT SHOULD BE DISMISSED WITHOUT PREJUDICE BASED ON DEFENDANTS' LACK OF CONSENT

Plaintiffs brought this case to address the federal and state laws that have been violated by the enactment of I-594. Defendants may consent to this Court's adjudication of all the claims raised by I-594, whether they be based on state or federal law. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-06 (1984). Defendants have chosen not to consent and instead have chosen to exercise their Eleventh Amendment rights. Accordingly, Defendants ask for certain claims to be dismissed, namely all claims against Defendant Washington State Attorney General's Office and all state law claims. If Defendants wish for the claims to be bifurcated and certain claims pursued in state court, Plaintiffs will oblige. Given the Defendants' refusal to waive their Eleventh Amendment rights, this Court should dismiss the state law claims without prejudice so that they may be refiled in state court. *See Freeman v. Oakland Unified School Dist.*, 179 F.3d 846, 846-47 (9th Cir. 1999) (holding that dismissing claims *without prejudice* is the proper procedure where the dismissal is not on the merits, such as when faced with Eleventh Amendment concerns).

## CONCLUSION

For all the reasons above, Defendants' Motion to Dismiss should be denied with regard to issues of standing. However, given the States' lack of consent with regard to the Eleventh Amendment, Plaintiffs' claims against Defendant Washington State Attorney General's Office and all state law claims should be dismissed without prejudice.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 11
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

DATED this 23rd day of March, 2015.

          CORR CRONIN MICHELSON
          BAUMGARDNER FOGG & MOORE LLP


            *s/ David Edwards*
          Steven W. Fogg, WSBA No. 23528
          David B. Edwards, WSBA No. 44680
          1001 Fourth Avenue, Suite 3900
          Seattle, Washington 98154
          Tel: (206) 625-8600
          Fax: (206) 625-0900
          Email:    sfogg@corrcronin.com
                         dedwards@corrcronin.com


          Mikolaj T. Tempski, WSBA No. 42896
          Tempski Law Firm, PS
          40 Lake Bellevue Dr., Suite 100
          Bellevue, WA 98005
          Email:    miko@tempskilaw.com

              Attorneys for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 12
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## CERTIFICATE OF SERVICE

The undersigned certifies as follows:

1. I am employed at Corr Cronin Michelson Baumgardner Fogg & Moore LLP, attorneys for Plaintiffs herein.

2. On March 23, 2015, I filed the foregoing document through the Court's ECF service which will send notification of filing to the following parties indicated below:

Noah G. Purcell, WSBA No. 43492
*Solicitor General*
noahp@atg.wa.gov
R. July Simpson, WSBA No. 45869
*Assistant Attorney General*
RJulyS@atg.wa.gov
Jeffrey T. Even, WSBA No. 20367
*Deputy Solicitor General*
jeffe@atg.wa.gov
Rebecca R. Glasgow, WSBA No. 32886
*Deputy Solicitor General*
RebeccaG@atg.wa.gov
Office of the Attorney General
1125 Washington St. SE
P.O. Box 40100
Olympia, WA 98504-0100
*Attorneys for Defendants*

Paul J. Lawrence
Gregory J. Wong
Sarah S. Washburn
Pacifica Law Group LLP
1191 Second Avenue, Ste 2000
Seattle, WA 98101-3404
Paul.lawrence@pacificalawgroup.com
Greg.wong@pacificalawgroup.com
Sarah.washburn@pacificalawgroup.com

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED: March 23, 2015, at Seattle, Washington.

/s/ Tammy Miller

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 13
Case No. 3:14-cv-6026 BHS

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900