The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| NORTHWEST SCHOOL OF SAFETY, a Washington sole proprietorship, PUGET SOUND SECURITY, INC., a Washington corporation, PACIFIC NORTHWEST ASSOCIATION OF INVESTIGATORS, INC., a Washington corporation, FIREARMS ACADEMY OF SEATTLE, INC., a Washington corporation, DARRYL LEE, XEE DEL REAL, JOE WALDRON, GENE HOFFMAN, ANDREW GOTTLIEB, ALAN GOTTLIEB, GOTTLIEB FAMILY REVOCABLE LIVING TRUST, A Washington trust, and SECOND AMENDMENT FOUNDATION, a non-profit organization,<br>　　　　　　　　Plaintiffs,<br>v.<br>BOB FERGUSON, Attorney General of Washington (in his official capacity), WASHINGTON ATTORNEY GENERAL'S OFFICE, and JOHN R. BATISTE, Chief of the Washington State Patrol (in his official capacity), and DOES I-V,<br>　　　　　　　　Defendants,<br>and<br>CHERYL STUMBO, WASHINGTON ALLIANCE FOR GUN RESPONSIBILITY AND EVERYTOWN FOR GUN SAFETY ACTION FUND FOR I-594,<br>　　　　　　Intervenor-Defendants | NO. 3:14-cv-6026 BHS<br><br>REPLY IN SUPPORT OF MOTION TO DISMISS |

REPLY IN SUPPORT
OF MOTION TO DISMISS

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

## I.   INTRODUCTION

Unable to show standing or ripeness under controlling precedent, Plaintiffs ask this Court to ignore that precedent. The Court should decline and dismiss Plaintiffs' complaint.

In an *en banc* opinion, the Ninth Circuit adopted a clear test for when a party may bring a pre-enforcement challenge to a statute outside the free speech context: the party must show "a 'genuine threat of imminent prosecution'" under a three-part inquiry. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)). Plaintiffs never even mention this test, much less attempt to satisfy it. Instead, they imply that the test has been overruled by later Supreme Court decisions. They are wrong, as evidenced by the Ninth Circuit applying this test repeatedly and routinely in recent years.[1] Under this test, Plaintiffs cannot show standing or ripeness, as they effectively concede by never even arguing to the contrary.

I-594 is only months old. No court has interpreted it. No one has been prosecuted for violating it. No Plaintiff has alleged that he has been threatened with prosecution or even told that his conduct violates the law. Instead, Plaintiffs have unilaterally decided to construe I-594 to be as inconvenient as possible. But a subjective decision to restrict one's behavior is not "the functional equivalent of a well-founded fear of enforcement." *Humanitarian Law Project v. U.S. Treasury Dept.*, 578 F.3d 1133, 1143 (9th Cir. 2009). Even in Plaintiffs' preferred formulation, there must be "threatened action by government." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007). Plaintiffs have shown no such threat. They have thus shown neither standing nor ripeness, and their claim should be dismissed.

## II.   ARGUMENT

It is Plaintiffs' burden to establish both standing and ripeness. *See, e.g.*, *Chandler v.*

---

[1] *See, e.g.*, *Protectmarriagecom-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014); *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013); *McCormack v. Hiedeman*, 694 F.3d 1004, 1021 (9th Cir. 2012); *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012).

REPLY IN SUPPORT
OF MOTION TO DISMISS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

*State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). Given that this is a pre-enforcement challenge to a statute that does not restrict speech, the test they must meet is clear: they must show a "'genuine threat of imminent prosecution.'" *Thomas*, 220 F.3d at 1139 (quoting *Stoianoff*, 695 F.2d at 1126). This test was adopted by the *en banc* Ninth Circuit in *Thomas* and has been applied in countless cases since.[2] In determining whether Plaintiffs have met this burden, this Court looks to "[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Id* at 1139. Plaintiffs never even mention this test, much less attempt to meet it, and they cannot. Instead, they offer a number of theories about why this test no longer controls. All of these theories are meritless.

A. **Plaintiffs Have Not Shown Article III Standing or Ripeness Under the Controlling Test**

Under the first *Thomas* factor, Plaintiffs must allege a concrete plan to violate a statute at some point in the future. *Thomas*, 220 F.3d at 1139. A "some day" anticipation, with no description of a "concrete plan[ ], or indeed even any specification of *when* the some day will be," does not rise to the level of an "actual or imminent" injury. *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996). Here, Plaintiffs have no plan or intention to violate I-594. Plaintiffs claim that it is sufficient that they are avoiding certain conduct because they "cannot determine" whether that conduct "is criminalized by I-594." *See, e.g.*, Compl. ¶¶ 9-12, 14. But as detailed further below, "[a]llegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

---

[2] *See, e.g.*, cases cited in footnote 1; *Baldwin v. Sebelius*, 654 F.3d 877, 879 (9th Cir. 2011) (applying *Thomas* "genuine threat of imminent prosecution standard" test); *Human Life of Washington, Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) (same); *Stormans v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009) (same).

REPLY IN SUPPORT
OF MOTION TO DISMISS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

The second factor is "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings." *Thomas*, 220 F.3d at 1139. Plaintiffs have not alleged that anyone, let alone any Plaintiff, has been threatened with prosecution under I-594.

The third factor—a history of past prosecution or enforcement under the challenged statute—also favors dismissal. *Id.* Plaintiffs concede that they are unaware of any "arrests, citations, or prosecutions related to a violation of I-594." Compl. ¶ 29. Plaintiffs complain in their Response to this motion that "Defendants have chosen not to enforce I-594, even in the face of intentional violations." Resp. at 5. But the evidence they cite provides no support for their claim. They point to the Washington State Patrol's decision not to arrest people who briefly exchanged firearms as part of a political protest. Compl. ¶ 26. But as Defendants admit, the reason the Patrol offered was that: "We don't think that we could prove that that's a transfer." *Id.* That is not evidence of conscious non-enforcement; it is evidence that the Patrol has not adopted Plaintiffs' subjective reading of I-594. In any event, even if Plaintiffs had offered evidence of deliberate non-enforcement, the Ninth Circuit has treated such evidence as a factor weighing *against* standing and ripeness. *See, e.g.*, *Thomas*, 220 F.3d at 1141 (citing as one reason that the case was unripe that the relevant enforcement "agencies are now surely aware of these landlords and still have launched no enforcement proceedings").

In short, Plaintiffs cannot show and have not even attempted to show standing and ripeness under the test established by the Ninth Circuit. They instead seek to avoid application of that test, but as detailed below, their arguments fail.

B.  *Thomas* **is Still Controlling Law in the Ninth Circuit**

Unable to show standing or ripeness under the Ninth Circuit's test for pre-enforcement challenges, Plaintiffs claim that this test is "based entirely on outdated case law that has been rejected by the Supreme Court." Resp. at 4. That is simply not true. The Ninth Circuit has routinely and repeatedly relied on the *Thomas* test in recent years,[3] as have district courts in

---

[3] *See, e.g.*, cases cited in footnotes 1 and 2.

REPLY IN SUPPORT
OF MOTION TO DISMISS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    this district[4] and other districts throughout the Ninth Circuit.[5] Plaintiffs' arguments to the
2    contrary rely on misrepresenting or misunderstanding the Supreme Court's decisions on this
3    topic, as well as a smattering of inapposite out-of-circuit and district court cases. None of these
4    arguments can change the controlling test, under which Plaintiffs' claim must be dismissed.

    **1.    *MedImmune* Did Not Overrule *Thomas***

6         Plaintiffs' primary argument is that the Supreme Court's decision in *MedImmune, Inc.*
7    *v. Genentech, Inc*, implicitly overruled *Thomas*. Not so.
8         *MedImmune* did not even involve the issue addressed in *Thomas*: when a party may
9    challenge a statute before it is enforced. Instead, *MedImmune* was about when a party may
10   preemptively sue *another private party*. Specifically, the question presented was whether a
11   "patent licensee [must] terminate or be in breach of its license agreement before it can seek a
12   declaratory judgment that the underlying patent is invalid." *MedImmune, Inc.*, 549 U.S. at 120-
13   21. That question has nothing to do with the issues in this case or in *Thomas*.
14        Because *MedImmune* had nothing to do with a pre-enforcement challenge to a statute,
15   the Court unsurprisingly announced no new principles about such cases. Rather, the Court
16   simply described its prior jurisprudence as to ripeness and standing in lawsuits against the
17   government before moving on to address the actual situation in the case, ripeness and standing
18   in a private dispute, where "Supreme Court jurisprudence is more rare." *Id.* at 129-30. The
19   language Plaintiffs cite as overruling *Thomas* was thus not a new holding of the Court; it was a
20   description of past case law. That language could not and did not change the standard
21   applicable to cases like this one and *Thomas*.

---

[4] *See, e.g.*, *MTACC, Inc. v. New York State Dep't of Fin. Servs.*, __ F. Supp. 3d __2015 WL 300779, at *5 (W.D. Wash 2015); *Skokomish Indian Tribe v. Goldmark*, 994 F. Supp. 2d 1168, 1179 (W.D. Wash. 2014); *Dilworth v. City of Everett*, __ F. Supp. 3d –, 2014 WL 6471780, at *3 (W.D. Wash 2014).

[5] *See, e.g.*, *Missouri v. Harris*, __ F. Supp. 3d __, 2014 WL 4961473, at *15 (E.D. Cal. 2014); *Puente v. Arpaio*, __ F. Supp. 3d __, 2015 WL 58671, at *6-8 (D. Ariz. 2015) (appeal filed Feb. 4, 2015); *Webb v. Hawaii Public Hous. Auth.*, 2014 WL 1250354, at *3-4, not reported in F.Supp.2d (D. Hawaii, March 25 2014); *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1080-81 (N.D. Cal. 2013); *Davis v. City of Selma*, 2013 WL 3354443, at *4-5 (E.D. Cal. 2013); *Bank of New York Mellon v. City of Richmond*, 2013 WL 5955699, at *5, (N.D. Cal. 2013); *Yoshioka v. Charles Schwab Corp.*, 2012 WL 5932817, at *8 (N.D. Cal. 2012).

1    Moreover, both the language Plaintiffs cite from *MedImmune* and the prior holdings
2    described there are entirely consistent with *Thomas*. *MedImmune* summarized how a plaintiff
3    can establish standing and ripeness "*where threatened action* by government is concerned."
4    *Id.* at 129 (emphasis added and removed). The Court noted: "For example, in *Terrace v.*
5    *Thompson*, 263 U.S. 197 (1923), the State threatened the plaintiff with forfeiture of his farm,
6    fines, and penalties if he entered into a lease with an alien in violation of the State's anti-alien
7    land law. *Given this genuine threat of enforcement*, we did not require," the plaintiff actually to
8    violate the law. *Id.* at 129 (emphasis added). In other words, *MedImmune* recognized, and
9    certainly did not abandon, the requirement in prior Supreme Court cases and in *Thomas* that a
10   Plaintiff show a "genuine threat of enforcement" before bringing a pre-enforcement challenge.
11   Plaintiffs have not shown that they face such a genuine threat.

12   In any event, neither Plaintiffs' view nor our view of *MedImmune*'s impact on *Thomas*
13   should ultimately guide this Court. What matters is the Ninth Circuit's view. And as noted
14   above, the Ninth Circuit has never even hinted that *MedImmune* overruled *Thomas*, and instead
15   has continued to rely on the *Thomas* test routinely. *See, e.g.*, *Lair v. Bullock*, 697 F.3d 1200,
16   1207 (9th Cir. 2012) (holding that before a district court may ignore circuit precedent based on
17   intervening Supreme Court precedent, "[t]he intervening higher precedent must be 'clearly
18   inconsistent' with the prior circuit precedent").

19   **2.    Plaintiffs' Attack on *San Diego County* Is A Straw Man**

20   According to Plaintiffs, our "standing argument relies entirely on *San Diego County*."
21   Resp. at 8. They then attack *San Diego County*'s relevance because that decision's Second
22   Amendment analysis is no longer good law. *Id.* at 9-10. There are two fundamental flaws with
23   these arguments.

24   First, our standing and ripeness arguments are based on the test the Ninth Circuit has
25   articulated in countless cases, not just *San Diego County*. As noted above, the *en banc* Ninth
26   Circuit adopted this test for pre-enforcement challenges in *Thomas*, and it has adhered to this

1 test repeatedly in recent years.

2 Second, although Plaintiffs are obviously correct that *San Diego County*'s Second Amendment analysis is no longer good law in light of *District of Columbia v. Heller*, 554 U.S. 570 (2008), our motion never cited *San Diego County* for its Second Amendment analysis; we cited it for its assessment of standing and ripeness. That the case happened to be about gun laws and the Second Amendment has no bearing on the standing or ripeness test applied. At times, Plaintiffs seem to suggest that *Heller* created a distinct standing test for Second Amendment cases, Response at 9, but *Heller* suggests no such thing, and the Ninth Circuit has never adopted a different test for Second Amendment cases.

For these reasons, courts in this district and across the Ninth Circuit have recognized that the standing and ripeness test in *San Diego County* remains good law. *See, e.g.*, *MTACC, Inc. v. New York State Dep't of Fin. Servs*, __ F. Supp. 3d __2015 WL 300779, at *5 (W.D. Wash, January 21, 2015) ("*San Diego County* remains controlling law, and, at least where First Amendment rights are not implicated, a plaintiff must show a genuine threat of imminent prosecution."(internal quotations marks omitted)).[6] Plaintiffs have not shown otherwise.

### 3. Plaintiffs' Out-of-Circuit and District Court Cases Are Inapposite

Unable to prevail under Ninth Circuit precedent or to explain why it should not apply, Plaintiffs instead cite a handful of cases from other circuits and districts. None helps them.

First and foremost, Plaintiffs cite *Nat'l Rifle Ass'n Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012). That case, however, had nothing to do with a pre-enforcement challenge to a statute. The statutes at issue there had been on the books for nearly *50 years* before the plaintiffs filed suit, *id.* at 189 ("The federal laws at issue . . . were enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968."), and there was no question as to their scope or application. The statutes prohibited federally licensed firearm dealers "from selling handguns to persons under the age of 21," such as the plaintiffs.

---

[6] *See also* cases cited in footnotes 1-5.

REPLY IN SUPPORT
OF MOTION TO DISMISS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

*Id.* at 188. No one argued that the claim was unripe or hypothetical. Here, by contrast, I-594 has been on the books for just months, and Plaintiffs admit that they "cannot determine whether the specific 'transfers' they are engaging in are actually violations of I-594." Resp. at 8. One purpose of requiring ripeness and real injury is to avoid such hypothetical litigation.

Plaintiffs also cite *Jackson v. City and County of San Francisco*, 829 F. Supp. 2d 867 (N.D. Cal. 2011), but that case is both distinguishable and unpersuasive. It is distinguishable because the local ordinances at issue were not new, and it was undisputed that the conduct in which the plaintiff wished to engage would violate them. The case is also unpersuasive because it never applies or even cites the binding *Thomas* test, instead calling into question *San Diego County* on the same unconvincing rationales cited by Plaintiffs here. For example, the court opined that "the applicability of the standing analysis in *Gun Rights Committee* to a case involving assertion of individual constitutional guarantees is uncertain," *id.* at 871, but the Ninth Circuit has applied the same test to many "assertion[s] of individual constitutional guarantees" in the years both before and after *Jackson*.[7]

Finally, Plaintiffs cite *Valley View Health Care, Inc. v. Chapman*, 992 F. Supp. 2d 1016 (E.D. Cal. 2014), appeal dismissed (Aug. 7, 2014), but that case, like *Jackson*, failed to apply or even cite the *Thomas* test, and the court explicitly noted that its caseload prevented it from addressing all the relevant case law and arguments. *Id.* at 1025-26 (encouraging the parties "to contact United States Senators Dianne Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action"). The Court should not rely on nonbinding authority that ignores controlling authority.

C.  **A Subjective Chilling of Behavior Due to the Mere Existence of a Statute is No Substitute for an Injury in Fact**

I-594 has not been enforced against Plaintiffs or anyone else. Nonetheless, Plaintiffs

---

[7] *See, e.g.*, cases cited in footnote 2; *Lopez v. Candaele*, 630 F.3d 775, 787-88 (9th Cir. 2011) (citing *San Diego County* for the principle that "some day" intentions are insufficient to establish standing); *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (same); *Humanitarian Law Project*, 578 F.3d at 1143 (same).

REPLY IN SUPPORT
OF MOTION TO DISMISS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

complain that I-594's mere existence and their subjective decisions to forego certain behavior based on their interpretation of the law cause them harm. But the Ninth Circuit has repeatedly held that "[n]either the 'mere existence of a proscriptive statute' nor a 'generalized threat of prosecution' satisfies the 'case or controversy' requirement." *Wolfson*, 616 F.3d at 1058 (quoting *Thomas*, 220 F.3d at 1139).[8] "Every criminal law, by its very existence, may have some chilling effect on personal behavior," *San Diego Cnty.*, 98 F.3d at 1129, but "neither self-censorship nor subjective chill is the functional equivalent of a well-founded fear of enforcement," *Humanitarian Law Project*, 578 F.3d at 1143.

This is not some idiosyncratic Ninth Circuit doctrine. The Supreme Court has, for good reason, drawn a line between "[a]llegations of a subjective chill" and "actual harm": "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'" *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (quoting *United Public Workers of Am. (C.I.O) v. Mitchell*, 330 U.S. 75, 89 (1947)). To avoid rendering advisory opinions on constitutional questions, "concrete legal issues, presented in actual cases, not abstractions, are requisite." *United Public Workers of Am. (C.I.O) v. Mitchell*, 330 U.S. 75, 89 (1947).

For example, in *W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309 (1967), the plaintiffs wished to challenge a law before a determination that the law applied to them. The Supreme Court dismissed the case because "[t]he effect would be that important and difficult constitutional issues would be decided devoid of factual context and before it was clear that appellants were covered by the Act." *Id.* at 312. "[T]he District Court should not be forced to decide these constitutional questions in a vacuum." *Id*.

Likewise here, I-594 is still in its infancy. Washington prosecutors have not made

---

[8] *See also, e.g.*, *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002); *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983) ("The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III.")

REPLY IN SUPPORT
OF MOTION TO DISMISS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

charging decisions. Washington courts have not interpreted the law. Plaintiffs have not been prosecuted, threatened with prosecution, or even told by any government official that their conduct violates I-594. Instead, Plaintiffs have developed their own onerous reading of the law in an attempt to manufacture a dispute. That is not enough to create a case or controversy under Article III. With no well-founded fear of enforcement, the subjective chilling of Plaintiffs' behavior is not a stand in for real injury.

### D. Plaintiffs Have Also Failed to Show Prudential Standing and Ripeness

This Court should also find a lack of standing and ripeness based on prudential considerations. In addressing this topic, Plaintiffs again ignore controlling authority in favor of nonbinding decisions from other district courts. The Court should follow Ninth Circuit law.

As to ripeness, "[c]ourts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule." *Oklevueha Native Am. Church*, 676 F.3d at 837. Courts are particularly reluctant to consider as-applied vagueness claims absent any evidence of how a law has been applied. *See, e.g.*, *San Diego Cnty.*, 98 F.3d at 1132; *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996). Plaintiffs offer nothing to overcome this high prudential bar. This Court should take a practical approach, recognizing that the issues presented here should not be resolved absent real facts about I-594's application.

As to prudential standing, Plaintiffs misunderstand the concept of a "generalized grievance." The question is not whether Plaintiffs claim that some action is chilled, it is whether many others could raise the same assertion "in substantially equal measure." *San Diego Cnty.*, 98 F.3d at 1131-32. For example, Plaintiffs claim they are unsure whether they can still check firearms in their luggage when traveling to or from Washington. Compl. ¶¶ 10-11. But anyone traveling to or from Washington who wishes to bring a firearm could raise the same argument. And Plaintiffs have never alleged that any enforcement authority in Washington has ever suggested that I-594 prohibits doing so. The Court should not allow

REPLY IN SUPPORT
OF MOTION TO DISMISS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1  Plaintiffs to force a premature adjudication in a factual vacuum based on their own subjective
2  decision to modify their behavior without any threat of enforcement.

### III. CONCLUSION

Plaintiffs cannot prove standing or ripeness under the binding Ninth Circuit test. Indeed, they never even attempt to do so in their Response. Instead they ask this Court to ignore binding authority and issue an advisory opinion protecting them against purely speculative threats. This Court should decline. Defendants respectfully ask this Court to dismiss Plaintiffs' Complaint.

DATED this 27th day of March 2015.

ROBERT W. FERGUSON
  *Attorney General*

NOAH G. PURCELL, WSBA # 43492
  *Solicitor General*

s/ *R. July Simpson*
R. JULY SIMPSON, WSBA #45869
  *Assistant Attorney General*

JEFFREY T. EVEN, WSBA #20367
REBECCA R. GLASGOW, WSBA #32886
  *Deputy Solicitor Generals*

PO Box 40100
Olympia, WA  98504-0100
360-753-6200
Counsel for Bob Ferguson, Washington Attorney General's Office and John R. Batiste

REPLY IN SUPPORT
OF MOTION TO DISMISS

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

# CERTIFICATE OF SERVICE

I certify, under penalty of perjury under the laws of the state of Washington, that I electronically filed a true and correct copy of the foregoing document with the United States District Court ECF system, which will send notification of the filing to the following:

| | |
|---|---|
| David B. Edwards<br>Steven W. Fogg<br>Corr Cronin Michelson Baumgardner & Preece<br>1001 4th Avenue, Suite 3900<br>Seattle, WA 98154-1051<br>Phone: 206.625.8600<br>dedwards@corrcronin .com<br>sfogg@corrcronin.com | Mikolaj T. Tempski<br>Tempski Law Firm PS<br>40 Lake Bellevue, Suite 100<br>Bellevue, WA 98005<br>Phone: 425.998.6203<br>Email: Miko@TempskiLaw.com |
| Gregory J. Wong<br>Paul J. Lawrence<br>Sarah S. Washburn<br>Pacifica Law Group, LLP<br>1191 Second Avenue, Suite 2000<br>Seattle Washington 98101-3404<br>paul.lawrence@pacificalawgroup.com<br>greg.wong@pacificalawgroup.com<br>sarah.washburn@pacificalawgroup.com | |

DATED this 27th day of March 2015, at Olympia, Washington.

s/ Stephanie N. Lindey
STEPHANIE N. LINDEY
Legal Secretary

REPLY IN SUPPORT
OF MOTION TO DISMISS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200