UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NORTHWEST SCHOOL OF SAFETY, a
Washington sole proprietorship, et al.,

                    Plaintiffs,

          v.

BOB FERGUSON, Attorney General of
Washington (in his official capacity), et
al.,

                    Defendants.

CASE NO. C14-6026 BHS

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS

          This matter comes before the Court on Defendants Bob Ferguson, John R. Batiste,

Washington Attorney General's Office, and Does I-V's (collectively "Defendants")

motion to dismiss (Dkt. 23).  The Court has considered the pleadings filed in support of

and in opposition to the motion and the remainder of the file and hereby grants the

motion and dismisses Plaintiffs' claims without prejudice for the reasons stated herein.

# I. PROCEDURAL HISTORY

On December 30, 2014, Plaintiffs Northwest School of Safety, Puget Sound Security, Inc., Pacific Northwest Association of Investigators, Inc., Firearms Academy of Seattle, Inc., Darryl Lee, Xee Del Real, Joe Waldron, Gene Gottlieb, Andrew Gottlieb, Alan Gottlieb, Gottlieb Revocable Living Family Trust, and Second Amendment Foundation (collectively "Plaintiffs") filed a complaint against Defendants asserting violations of the "Second and Fourteenth Amendments of the United States Constitution and Sections 3 and 24 of Article I of the Washington State Constitution . . . ."  Dkt. 1, ¶ 1. Plaintiffs allege that Initiative to the Legislature No. 594's ("I-594") amendments to RCW 9.41 infringe on a "host of Second Amendment rights . . . ." *Id.* ¶ 2.

On March 5, 2015, Defendants filed a motion to dismiss.  Dkt. 23.  On March 23, 2015, the Court granted Intervenor Defendants Everytown for Gun Safety Action Fund for I594, Cheryl Stumbo, and Washington Alliance for Gun Responsibility's ("Intervenors") motion to intervene.  Dkt. 29.  That same day, Northwest responded to the motion to dismiss (Dkt. 30) and Intervenors joined in the response (Dkt. 31).  On March 27, 2015, Defendants replied.  Dkt. 32.

# II. FACTUAL BACKGROUND

Plaintiffs allege that I-594 criminalizes the "non-commercial 'transfer' of firearms" in Washington, presenting "a serious impediment to sharing firearms for self-defense and firearms safety" and imposing "an overwhelming burden on individuals who are involved in repeated transfers of the same firearm . . . ."  Dkt. 1, ¶ 2.  Plaintiffs have expressed no intent to violate the I-594 amendments and claim to have refrained from all

1    conduct that might violate I-594.  *Id.* ¶ 29.  Moreover, Plaintiffs allege that they have not

2    received any threats of prosecution from Defendants.  *Id.*

3                                    **III. DISCUSSION**

4         Defendants move the Court to dismiss this action because (1) Plaintiffs lack

5    standing to challenge the I-594 amendments, (2) Plaintiffs' claims are not ripe, and (3)

6    Defendants assert Eleventh Amendment immunity.  Dkt. 23.

7    **A.      Article III Standing**

8         Defendants argue that Plaintiffs lack standing to assert their claims.  Article III of

9    the United States Constitution limits the jurisdiction of federal courts to cases and

10   controversies.  Under Article III, courts use the doctrine of standing "to identify those

11   disputes which are appropriately resolved through the judicial process."  *Lujan v.*

12   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Whitmore v. Arkansas*, 495 U.S.

13   149, 155 (1990)).  To satisfy Article III standing, a plaintiff must demonstrate that

14            (1) it has suffered an 'injury in fact' that is (a) concrete and
             particularized and (b) actual or imminent, not conjectural or hypothetical;
15            (2) the injury is fairly traceable to the challenged action of the defendant and
             (3) it is likely, as opposed to merely speculative, that the injury will be
16            redressed by a favorable decision.

17   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81

18   (2000).

19        In this case, Defendants only challenge the first prong of the standing inquiry,

20   which is injury in fact.  Plaintiffs argue that they are currently being injured and, in the

21   alternative, that Defendants' case law is outdated and has been rejected by the Supreme

22   Court.  Dkt. 30 at 4–10.  Plaintiffs' arguments, however, are somewhat unorganized as

they claim that they have suffered an actual injury under *Medlmmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007), which they assert is the Supreme Court case that has expressly rejected existing Ninth Circuit law.  Dkt. 30 at 5, 10.  The Court will first establish the legal framework to address the parties' dispute and then consider whether Plaintiffs have met their burden under that framework.

### 1.      Validity of Precedent

When a party challenges a statute before it has been enforced, the party must show that it faces "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement . . . ."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  The Ninth Circuit has held that "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement."  *Thomas*, 220 F.3d at 1139.  Instead, "there must be a 'genuine threat of imminent prosecution.'"  *Id.* (quoting *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)).  In evaluating whether a claimed threat of prosecution is genuine, the Ninth Circuit has directed district courts to consider

> whether the plaintiffs have articulated a concrete plan to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute.

*Thomas*, 220 F.3d at 1139.

In this case, Plaintiffs explicitly assert that they face a fear of prosecution.  Specifically, Plaintiffs contend that they

1
2
     currently and reasonably fear arrest, prosecution, fines, and imprisonment
     for the constitutionally protected "transfers" in possession of their firearms
     that they would be currently undertaking but for their criminalization under
     I-594.

3
4
Dkt. 30 at 2.  It would seem then that the Court should evaluate this matter under the

5
factors set forth in *Thomas* because the issue before the Court is whether Plaintiffs'

6
alleged threat of prosecution is generalized or whether it is genuine and imminent.

7
*Thomas*, 220 F.3d at 1139.  Plaintiffs, however, contend that *Thomas* is outdated and has

8
been rejected by the Supreme Court.  Dkt. 30 at 8–10.  Plaintiffs submit numerous

9
arguments in support of this contention, but the arguments essentially boil down to a split

10
among district courts in this circuit.

11
     Plaintiffs argue that *San Diego County Gun Rights*, upon which *Thomas* is based,

12
"has been undermined, if not entirely overruled, by the Supreme Court . . . ."  Dkt. 30 at

13
9.  In asserting this argument, Plaintiffs rely on the district court opinion in *Jackson v.*

14
*City & Cnty. of San Francisco*, 829 F. Supp. 2d 867 (N.D. Cal. 2011), in which the court

15
concluded that the validity of *San Diego County Gun Rights* is questionable in light of the

16
Supreme Court opinions of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and

17
*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).  *See Jackson*, 829 F. Supp. 2d

18
at 871–72.  Although at least one ruling in *Jackson* has been appealed, ruled on by the

19
Ninth Circuit, and has a pending petition for writ of certiorari before the Supreme Court,

20
that particular ruling does not involve either the standing inquiry or the court's

21
conclusion that *San Diego County Gun Rights* has, at least to some extent, been implicitly

22

overruled by the Supreme Court.  Therefore, at most, *Jackson* is a persuasive authority on the issue before this Court.

In contrast to *Jackson*, Defendants have cited ten recent district court cases applying *San Diego County Gun Rights* and *Thomas* as binding authority.  *See* Dkt. 32 at 5 nn.4–5.  In light of this divide among the district courts, the Court opts for the more judicially conservative route and will apply the binding and not explicitly overruled precedent.  Therefore, to the extent that Plaintiffs request the Court apply any legal framework other than that set forth in *Thomas*, the Court denies that request.

**2.    Injury**

In this case, the issue of whether Plaintiffs' alleged threat of prosecution is generalized or whether it is genuine and imminent is rather straightforward.  Because Plaintiffs fail to address the alleged facts of this case under the *Thomas* factors, Plaintiffs implicitly concede that at least this portion of Defendants' argument has merit. Regardless, even if the Court engages in a *sua sponte* evaluation of the alleged facts, Plaintiffs' alleged threat of prosecution is not genuine or imminent.  In fact, Plaintiffs explicitly concede that they have no intention of violating I-594, Plaintiffs have failed to allege any specific warning or threat to initiate a prosecution, and Plaintiffs have failed to allege any history of past prosecution or enforcement of I-594.  Therefore, under *Thomas*, the Court concludes that Plaintiffs have failed to show a genuine or imminent threat of prosecution and lack standing to bring this challenge to the "transfer" provision of I-594.

Plaintiffs do assert a brief argument that they are injured because they have to pay the transfer fee at a licensed dealer and wait a certain time period before a transfer is

completed.  Dkt. 30 at 7.  The Court, however, declines to conclude that this is sufficient injury for at least two reasons.  First, the alleged injury is hypothetical because Plaintiffs have failed to allege that any named plaintiff has actually paid the fee and/or has been subjected to the wait period.

Second, Plaintiffs seek an injunction that the "transfer" provisions are invalid and accepting review of only the fee and wait provisions would unlikely result in redressing the gravamen of Plaintiffs' injury.  In other words, finding that the fee is too much or that the wait period is too long is unlikely to result in a conclusion that I-594 is facially unconstitutional in all respects.  Therefore, the Court concludes that Plaintiffs lack standing to challenge I-594.[1]

The Court is sympathetic to Plaintiffs in that one must actually be prosecuted or under actual or immediate threat of prosecution before the Court may address the constitutionality of a statute.  While the fairness of this rule may definitely be questioned, it is beyond the authority of this Court to either vacate or decline to enforce the rule. Plaintiffs' federal claims will be dismissed without prejudice pending an actual injury, if any shall occur.

**B.     Eleventh Amendment Immunity**

"A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued."  *Pennhurst State Sch. & Hosp. v. Halderman*,

---

[1] Because the Court concludes that Plaintiffs have failed to show an injury in fact, the Court declines to address the relevant issue of prudential standing, which is ripeness.  In fact, the *Thomas* court concluded that, under similar facts, "the analysis is the same."  *Thomas*, 220 F.3d at 1139.

1   465 U.S. 89, 100 (1984) (emphasis supplied).  "[B]ecause of the problems of federalism

2   inherent in making one sovereign appear against its will in the courts of the other, a

3   restriction upon the exercise of the federal judicial power has long been considered to be

4   appropriate." *Employees v. Missouri Public Health & Welfare Dep't*, 411 U.S. 279, 294,

5   9 (1973).

6        In this case, Plaintiffs have sued the Attorney General's Office and have asserted

7   claims under the Washington State Constitution against Bob Ferguson and John Batiste.

8   Defendants move to dismiss these claims because, under the Eleventh Amendment, these

9   particular claims may not be asserted in this forum.  Dkt. 23 at 12–13.  Plaintiffs concede

10  that these particular claims should be dismissed, but ask for dismissal without prejudice.

11  Defendants fail to address this concession in their reply.  Therefore, the Court grants

12  Plaintiffs' request and dismisses these claims without prejudice.

13                                **IV. ORDER**

14       Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 23) is

15  **GRANTED**. Plaintiffs' claims are dismissed without prejudice, and the Clerk shall close

16  this case.

17       Dated this 7th day of May, 2015.

18

19       _____

20       BENJAMIN H. SETTLE
         United States District Judge

21

22